(No. 43316.—)

PETRAS P. SPETYLA, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.*—(Allis Chalmers Manufacturing
Company, Appellee.)

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 26, 1974.*

1

Frank S. Calandrino, of Springfield (Michael J. Logan, of counsel), for appellant.

Samuel C. Patton, of Springfield, for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded petitioner, Petras P. Spetyla, compensation for permanent and total disability suffered as the result of an accident while in the employ of respondent, Allis Chalmers Manufacturing Company. On review, the Industrial Commission set aside the award and rendered a decision awarding petitioner compensation for temporary total disability for a period of 5 6/7 weeks but finding that the injuries sustained in the accident did not result in any permanent disability for which compensation was payable under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.1 *et seq.*). On *certiorari* the circuit court of Sangamon County found that the decision of the Industrial Commission that no permanent disability had resulted from the injuries suffered in the accident was not contrary to the manifest weight of the evidence but that the award for temporary total compensation should be increased to cover a period of nine weeks. Except for ordering the increase in the amount of the award for temporary total compensation, the decision of the Industrial Commission was confirmed, and petitioner appealed to this court. 50 Ill.2d R. 302(a)(2).

Petitioner contends that the evidence shows that he was permanently and totally disabled as the result of the injuries suffered and that the decision of the Industrial Commission is against the manifest weight of the evidence. Respondent argues that it was the function of the Industrial Commission to determine the disputed questions

of fact presented by the evidence, that the Commission is not bound by the findings of the arbitrator and that the findings of the Commission are not against the manifest weight of the evidence.

That petitioner suffered an accidental injury which arose out of and in the course of his employment is not disputed. The testimony shows that while he was pulling on a wrench, the wrench slipped and petitioner fell backward striking his head against a steel table. He was taken to the plant infirmary where he was examined by Dr. Meyer, supervisor of medical services at respondent's plant. Dr. Meyer made a diagnosis of "contusion mild to moderate posterior to the ear, right, contusion or brachium right moderate acute, contusion acute posterior chest mild." Petitioner was given empirin and codeine for the pain. Dr. Meyer saw him the next day, at which time he complained of numbness and dizziness. The doctor administered a drug to reduce the swelling. He saw him again four days later and administered a shot of vitamin $B_{12}$ because he was complaining of numbness in his fingers. The doctor saw him on three occasions over the next two weeks and then referred him to Dr. Hayner, a neurosurgeon. At that time he was complaining of "hissing" in his right ear.

Petitioner returned to work approximately three weeks after the accident, worked three weeks and returned to Dr. Meyer complaining of headaches in the temporal area and back of the right ear, and dizziness. Approximately six weeks later Dr. Meyer permitted petitioner to return to work "with limited bending," but petitioner complained of pain when bending over to pick up things.

In addition to Dr. Hayner, Dr. Meyer referred petitioner for examination to Dr. Robert Alexander, a psychologist, and Dr. Rauh, a psychiatrist. None of these doctors was called to testify and their reports were not offered in evidence.

Approximately 17 months after the accident petitioner was seen by Dr. Gospodinoff, a psychiatrist. He was

4

complaining of dizziness, weakness and general symptoms of malaise. He was constantly tired and could not work. He had poor balance, felt lightheaded, and a roaring noise bothered him all the time. Dr. Gospodinoff's initial diagnosis was neurological impairment and depressive reaction. Petitioner was admitted to the hospital for a period of 15 days and was given antidepressants. He was seen by Dr. Wacaser, a neurosurgeon, who diagnosed petitioner as suffering from a post-concussion syndrome. Approximately two months later he was hospitalized for a period of approximately five weeks for the same symptoms but the symptoms of depression increased and worsened. He had suffered a weight loss earlier, and now suffered an additional weight loss. He could not sleep, had trouble concentrating, and cried all the time. It was necessary to give petitioner a series of shock treatments and Dr. Gospodinoff also called in a Dr. Chapin to treat an ulcer which had developed, but which appears to have been healed after the shock treatments. Dr. Gospodinoff saw petitioner over a period of approximately five months during which period the depression, weight loss and complaints of bells ringing and noises continued. The dizziness had not improved. It was Dr. Gospodinoff's opinion that the condition had become permanent, that the blow on the head might or could have caused the condition, that petitioner had not been capable of doing any work when he first examined him, approximately 17 months after the accident, that he was not, at the time of the hearing, employable and that the condition was permanent.

At the request of respondent petitioner was examined, approximately three years after the accident, by Dr. Paul M. Cadwell, a psychiatrist. Dr. Cadwell, called by petitioner, testified that he had found petitioner was spontaneous in his verbal production, in good contact with reality, showed no formal thinking disorders, was oriented as to time, place and person but was moderately to severely

depressed throughout the interview, and at one time was on the verge of tears. The doctor made a diagnosis of moderate to severe depressive reaction. In response to a hypothetical question he testified that the head injury sustained might or could have caused the subsequent disability and expressed the opinion that the condition was permanent and the possibility of any substantial improvement, quite low. He further stated that petitioner was incapable of performing the work which he had done prior to the injury as a machine operator in respondent's plant.

Dr. Meyer, called by respondent, testified that in his opinion petitioner was not permanently disabled, that the blow on the head was not serious enough to have caused his complaints and that he found no objective findings of injury. The record also contains the written report of Dr. Morris, whose specialty is not disclosed, advising Dr. Meyer that he had examined petitioner, whom Dr. Meyer had referred to him, 29 months after the accident, and was unable to find any abnormalities which would relate to his symptoms. He found no evidence of any neurological abnormalities and concluded that petitioner appeared to be "in fairly good shape considering his advanced years."

There is no question that under the Workmen's Compensation Act a disability caused by a neurosis which results from an accidental injury is compensable. (*Hook v. Industrial Com.,* 53 Ill.2d 245; *International Harvester Co. v. Industrial Com.,* 46 Ill.2d 238; *Douglass and Co. v. Industrial Com.,* 35 Ill.2d 100; *United States Fuel Co. v. Industrial Com.,* 313 Ill. 590.) The testimony of Dr. Gospodinoff and Dr. Cadwell is to the effect that petitioner's disability is the result of such a neurosis. The testimony of Dr. Meyer is directed only to the absence of objective findings which would explain petitioner's condition and that the condition was not permanent, and the written report of Dr. Morris deals only with the absence of neurological symptoms. Under these circumstances the testimony of Drs. Gospodinoff and Cadwell stands unre-

butted; there was, therefore, no conflict in the testimony for the Industrial Commission to resolve (*Allis Chalmers Manufacturing Co. v. Industrial Com.*, 57 Ill.2d 257; *Hook v. Industrial Com.*, 53 Ill.2d 245; *Kerz v. Industrial Com.*, 51 Ill.2d 319), and the decision of the Industrial Commission was contrary to the manifest weight of the evidence. The judgment of the circuit court of Sangamon County is accordingly reversed and the cause is remanded to the Industrial Commission with directions to enter a decision reinstating the award of the arbitrator.

<div align="right">

*Reversed and remanded,*
*with directions.*