PETERS v MICHIGAN BELL TELEPHONE COMPANY

MORRISH v GENERAL MOTORS CORPORATION

Docket Nos. 71928, 71931. Argued June 4, 1985 (Calendar Nos. 13, 14).—Decided November 22, 1985.

Patricia Peters was awarded workers' compensation for a psychiatric disability suffered in the course of her employment as a telephone operator for the Michigan Bell Telephone Company. The Workers' Compensation Appeal Board affirmed. The Court of Appeals, R. M. MAHER, P.J., and V. J. BRENNAN and HOOD, JJ., denied the defendant leave to appeal (Docket No. 68071). The defendant appeals.

Margaret E. Morrish was denied workers' compensation for a psychiatric disability which she claimed was related to her job with the General Motors Corporation. A hearing referee found that the plaintiff's disability was not caused, aggravated, or contributed to by her employment. The Workers' Compensation Appeal Board reversed. The Court of Appeals, DANHOF, C.J., and BRONSON, J. (CYNAR, J., dissenting), denied the defendant leave to appeal (Docket No. 68564). The defendant appeals.

In an opinion by Chief Justice WILLIAMS, joined by Justices LEVIN, CAVANAGH, and BOYLE, the Supreme Court *held:*

The Legislature amended the statute at issue in these cases effective January 1, 1982. Because the Court has construed the statute as being applicable to personal injuries occurring after January 1, 1982 (*ante,* p 531), the Supreme Court declines to reexamine its interpretation of the statute's predecessor because it is persuaded that it would be unwise to create potentially a third standard for determination of liability for alleged work-related mental disability. The cases are remanded to the Court of Appeals for consideration as on leave granted.

Justice RILEY, dissenting, stated that in order to recover

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Workmen's Compensation §§ 301, 302.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

[2] Am Jur 2d, Workmen's Compensation § 528.

Admissibility of opinion evidence as to employability on issue of disability and health and accident insurance and workers' compensation cases. 89 ALR3d 783.

workers' compensation benefits for alleged mental disability, a claimant should establish: by expert testimony by a preponderance of the evidence the existence of a mental disability; by a preponderance of the evidence that, as a matter of objective reality, the physical trauma, event or events which precipitated the mental disability actually occurred and that they were work-related; and by expert testimony by a preponderance of the evidence that the precipitating work-related physical trauma, event or events, to a substantial degree, aggravated, accelerated, or combined with some internal weakness or disease of the claimant to produce the mental disability.

1. The honest-perception standard which permitted compensation for mental disability where a claimant factually established a subjective, although mistaken, honestly perceived causal nexus between a mental disability and employment, although apparently viable at its inception, proved upon practical application not to be in accordance with the intent of the workers' compensation act. As a result, a change in that area of the law is necessary. Mental disabilities can arise from a physical trauma, from a specific mental stimulus, or from mental stimuli over a period of time. By requiring expert testimony to establish by a preponderance of the evidence a substantial causal nexus between employment and a proven mental disability, the spirit and philosophy of the act will be carried out. Moreover, this standard will continue to uphold the long-standing principle of Michigan's workers' compensation law that employers must take employees as they find them.

2. In order to recover benefits for an alleged mental disability under the workers' compensation act, a claimant should be disabled and should establish the disability by expert testimony by a preponderance of the evidence. In addition, the claimant should establish by a preponderance of the evidence, as a matter of objective reality, that a precipitating physical trauma, event or events actually occurred. Precipitating physical trauma, event or events are the "personal injury" as set forth in the workers' compensation act. "Personal injury" includes physical trauma, an event, i.e., a mental stimulus, or events, i.e., mental stimuli over a period of time. Where a mental disability is alleged as a result of continuing stress of employment occurring over a period of time, general conclusions of stress and anxiety would not be satisfactory. There should be specific incidents, shown in enough detail for the factfinder to determine that the specific events actually occurred and that they were work-related. Further, it should be shown that the work-related physical trauma, event or events,

to a *substantial* degree, aggravated or accelerated or combined with some internal weakness or disease of the claimant to produce the mental disability. Expert testimony should establish that the precipitating work-related physical trauma, event or events were stressful to the claimant and that there is a substantial causal nexus, the psychodynamics of which can be identified and elucidated by expert testimony to a reasonable degree of psychiatric certainty, between the precipitating work-related physical trauma, event or events and the mental disability. This standard would apply in all cases involving a mental disability where the date of the personal injury occurred prior to January 1, 1982, which have yet to be filed, have been filed but not yet heard by a hearing referee, or are currently pending and the issue was preserved for appeal.

Justice RYAN, joined by Justice BRICKLEY, concurring in part and dissenting in part with Justice RILEY, stated that while expert testimony may be necessary to establish a compensable mental disability, a rule should not be adopted which would automatically require such testimony per se. No provision of the workers' compensation act, including the provision that regulates process and procedure before a hearing referee or the Workers' Compensation Appeal Board, can be interpreted as requiring introduction of expert testimony to prove a psychiatric disability claim. In addition, lay testimony has been permitted in medical malpractice cases where the lack of professional care is so manifest that it would be within the common knowledge and experience of a layman that the conduct was careless and not within the standards of professional practice and care employed in a community. Likewise, there is the possibility that a mental disability may be so clearly manifest that it could be established by lay testimony.

DISSENTING OPINION BY RILEY, J.

1. WORKERS' COMPENSATION — WORK-RELATED INJURIES — MENTAL DISABILITY.

*In order to recover workers' compensation benefits for alleged mental disability, a claimant must establish: by expert testimony by a preponderance of the evidence the existence of a mental disability; by a preponderance of the evidence that, as a matter of objective reality, the physical trauma, event or events which precipitated the mental disability actually occurred and that they were work-related; and by expert testimony by a preponderance of the evidence that the precipitating work-related physical trauma, event or events, to a substantial degree, aggravated, accelerated, or combined with some internal weak-*

*ness or disease of the claimant to produce the mental disability (MCL 418.301[1]; MSA 17.237[301][1]).*

OPINION BY RYAN, J.

2. WORKERS' COMPENSATION — WORK-RELATED INJURIES — MENTAL
   DISABILITY — EXPERT TESTIMONY.

   *Expert testimony should not be required automatically to establish a compensable mental disability under the workers' compensation act; no provision of the act can be interpreted as requiring such testimony to establish a psychiatric disability claim, and there is the possibility that a mental disability may be so clearly manifest that it could be established by lay testimony.*

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Granner S. Ries*), for plaintiff Peters.

*Robert M. Crites* for plaintiff Morrish.

*Lacey & Jones* (by *Stephen Jay Schwartz*)· for defendant Michigan Bell Telephone Company.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell*), *John G. Rahie,* Office of General Counsel, and *Munroe & Nobach, P.C.* (by *Cameron C. McComb*), for defendant General Motors Corporation.

Amicus Curiae:

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

WILLIAMS, C.J. The Court granted leave in these two cases in order to consider the legal standard to be applied in workers' compensation cases involving psychiatric disabilities related to employment. The Legislature has amended the relevant statute effective January 1, 1982. Because this Court today

in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), has construed this statute as applicable to "personal injuries occurring on or after January 1, 1982," we·decline to reexamine our interpretation of the earlier statute in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978).

## FACTS

### A. *Peters v Michigan Bell Telephone Co*

The plaintiff worked as a telephone operator for the defendant from November, 1967, until September, 1977. In September 1978, the plaintiff filed a claim for workers' compensation benefits, alleging a nervous and emotional disorder, aggravation of hypertension, and an aggravation of an injury to the heart, circulatory system, and central nervous system.

Plaintiff was awarded benefits by the hearing referee in 1980, and, on October 29, 1982, the WCAB, citing *Deziel,* affirmed the award with a minor modification. The Court of Appeals denied the defendant's application for leave to appeal from the decision of the board. In an order dated September 19, 1984, this Court granted leave to appeal.

### B. *Morrish v General Motors Corp*

Plaintiff Morrish worked for General Motors from February, 1969, until January, 1978. Subsequently, Morrish · filed a workers' compensation claim, alleging a psychiatric disability caused by incidents at work. The hearing referee, on February 4, 1980, determined that there was no causal nexus between plaintiff's disability and her employment. On November 19, 1982, the Workers' Compensation Appeal Board reversed the decision

of the hearing referee and awarded benefits. The Court of Appeals denied defendant's application for leave to appeal on May 25, 1983. In an order dated September 19, 1984, this Court granted defendant's application for leave to appeal.

## DISCUSSION

In *Deziel,* this Court considered the compensability of mental disorders under the existing statute, MCL 418.301(1); MSA 17.237(301)(1). In interpreting the statutory requirement that compensable injuries must arise "out of and in the course of" employment, we developed a three-step analysis. This analysis required findings that

1) the claimant was disabled;

2) an injury in the form of a precipitating work-related event had occurred;

3) using a subjective causal nexus standard, the employment had combined with some internal weakness or disease to produce the disability.

*Deziel,* p 37.

The relevant statute was subsequently changed by the Legislature, 1980 PA 357, MCL 418.301(2); MSA 17.237(301)(2), effective January 1, 1982.[1]

## CONCLUSION

In light of the legislative action, we decline to reexamine our interpretation in *Deziel* as we are persuaded that it would be unwise to create potentially a third standard for the determination of the complex question of liability for alleged work-re-

---

[1] "Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof."

lated mental disability. These cases are remanded to the Court of Appeals as on leave granted for further proceedings not inconsistent with this opinion.

LEVIN, CAVANAGH, and BOYLE, JJ., concurred with WILLIAMS, C.J.

RILEY, J. (*dissenting*). These two cases were consolidated to enable this Court to decide the appropriate legal standard to apply in workers' compensation cases involving claims of psychiatric disabilities arising "out of and in the course of" one's employment. This my colleagues have not done. Rather, the majority has stated that because the Legislature has amended the relevant statute effective January 1, 1982, they need not reexamine this Court's interpretation of the earlier statute in *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1; 268 NW2d 1 (1978).

This rationale completely disregards the fact that the rules set forth in *Deziel (After Remand)* will be applied to all mental disability cases with a "personal injury" date prior to January 1, 1982. This would include cases yet to be filed (providing compliance with the notice and claim provision set forth at 1969 PA 317, MCL 418.381[1]; MSA 17.237[381][1]), cases filed but yet to be heard by the hearing referee, and, also, those cases now pending wherein the issue was preserved for appeal. The majority, in its cursory opinion, has articulated no reasons why an amendment should preclude consideration of cases unaffected by that legislation. Additionally, and most importantly, by adhering to *Deziel (After Remand)* the majority ignores standards previously set forth by this

Court regarding interpretation or application of workers' disability compensation statutes.[1]

Thus, I respectfully dissent and write separately in an effort to interpret the Workers' Disability Compensation Act in a manner consistent with the intent of the legislation.

---

[1] In *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984), this Court stated that, with regard to statutory interpretation or application, we must "give effect to the plain meaning of the language used." This rule was recently reaffirmed in the consolidated cases of *Franks v White Pine Copper Division, Chambers v General Motors Corp,* and *Gomez v General Motors Corp,* 422 Mich 636, 650; 375 NW2d 715 (1985), wherein this Court stated: "Our first step in applying [a] statute must be an examination of the language for, if it is clear, interpretation is unnecessary, and it need only be applied."

The statutory language applicable to the workers' compensation issues raised in these cases is set forth at 1969 PA 317, MCL 418.301(1); MSA 17.237(301)(1), which states, inter alia, that for a "personal injury" to be compensable it must arise "out of and in the course of" the claimant's employment. Within the context of the mental disability issues raised in these cases, I believe this language requires application and not interpretation.

Present interpretation of the statutory language in *Deziel (After Remand)* allows a claimant to recover compensation for a mental disability without presenting any objective evidence establishing a causal nexus between the employment and the mental disability. Accordingly, a claimant may recover benefits for a mental disability that may not in fact arise "out of and in the course of his employment."

The majority cautions that it would be unwise to reconsider this interpretation lest we create a "third" standard in determining the compensability of an alleged work-related mental disability. However, I believe the issue is not whether this Court should or should not create a "third" standard, but, rather, whether the *Deziel (After Remand)* holding is in accordance with the legislative directive that a "personal injury" must arise "out of and in the course of" employment to be compensable.

Therefore, inasmuch as I believe that the honest-perception test set forth in *Deziel (After Remand)* does not effectuate the legislative intent of 1969 PA 317, MCL 418.301(1); MSA 17.237(301)(1), I believe that it is of primary importance that we disavow that standard. The possibility that, as the majority states, this may create a "third" standard is not a valid reason to reject reconsideration of *Deziel (After Remand).* The weaknesses of the honest-perception test can be assessed. The implications of a possible "third" standard cannot.

## I

## FACTS

### A. *Peters v Michigan Bell Telephone Co*

The plaintiff, born in 1941, began working for the defendant as a telephone operator in November, 1967, and continued as a telephone operator the entire ten years of her employment. Plaintiff last worked for the defendant on September 2, 1977, when she left her job complaining of dizziness and impaired vision. Following a respite of some three months, plaintiff attempted to return to work on December 3, 1977, but defendant terminated her employment at that time for excessive absences due, in part, to her high blood pressure condition.

The plaintiff subsequently filed a workers' compensation petition on September 26, 1978, alleging a work-related disability in the form of a nervous-emotional disorder, aggravation of hypertension, and aggravation of an injury to the heart and circulatory and central nervous systems.

At an administrative hearing, the plaintiff testified regarding various aspects of her job that she alleged contributed to her disability. Plaintiff testified about the numerous telephone calls she was required to handle and indicated that many of these phone calls were abusive. She also testified that her supervisors were very rigid regarding attendance, tardiness, and the frequency of trips to the restroom. Plaintiff stated that it was necessary for her to leave her work station more often than her co-workers because of medical treatment she was undergoing for hypertension. She testified that it was necessary to request permission to go to the restroom and that records were kept of these visits.

Testimony was also heard from three medical experts, Dr. Bruce L. Danto (plaintiff's psychiatrist), Dr. Gordon R. Forrer (defendant's psychiatrist), and Dr. S. L. Schuchter (defendant's internist). At the conclusion of the proofs, the hearing referee entered an open award, finding that the plaintiff had suffered a compensable injury described as a "moderately severe anxiety reaction caused by work stress." The Workers' Compensation Appeal Board affirmed the open award of benefits granted by the hearing referee, with the sole modification that interest on accrued compensation be paid at the rate of twelve percent per year, rather than the five-percent rate ordered by the hearing referee. Defendant's subsequent application for leave to appeal to the Court of Appeals was denied. Defendant thereafter filed an application for leave to appeal with this Court which was granted September 19, 1984.

## B. *Morrish v General Motors Corp*

The plaintiff, born in 1949, began working for the defendant in February of 1969. For the first few years she worked a teletype on the motor line, sorting pistons. In 1976, she fell down a stairway at work and was incapacitated for a few months with an alleged back injury. Following her return to work without restrictions in October of 1976, she performed various jobs.

Shortly after returning to work, the plaintiff was given a job in the sanitation department. Apparently, in this particular job, the plaintiff initially had problems with the foreman. In response to alleged threats and harassment by the foreman, the plaintiff became depressed and angry, drank considerably, and considered shooting herself or the foreman because of the alleged threats and

harassments. Her last day of work with General Motors was January 16, 1978.

The plaintiff subsequently filed a petition for workers' disability compensation benefits alleging a psychiatric disability. The hearing referee, following lay and expert testimony, determined that the plaintiff's nervousness or mental disability was not caused by, aggravated by, or contributed to by her employment and that there was no causal nexus between her illness and her employment. The referee concluded that plaintiff's testimony on this issue was not credible.

In an order entered November 19, 1982, the Workers' Compensation Appeal Board reversed the decision of the hearing referee and ordered the payment of interest on accrued compensation at the rate of twelve percent per year. The Court of Appeals denied the defendant's application for leave to appeal on May 25, 1983. In an order dated September 19, 1984, this Court granted the defendant's application for leave to appeal.

## II

### DISCUSSION

Historically, one of the most controversial and complex issues to face this Court in the area of workers' disability compensation is the appropriate standard to apply in cases involving claims of mental disabilities[2] arising out of and in the course

---

[2] The term "mental disability" is used in this opinion in a general sense:

"Again, it is incumbent upon us to caution the reader that this Court cannot attempt to categorize and discuss in this opinion every conceivable kind of neurotic, psychoneurotic, psychotic, depressive; or functional overlay, hysterical symptom, personality disorder. This Court attempts to be all-inclusive by using the general term 'mental,' while focusing on psychoneurotic or psychotic phenomena. However, the Court does not intend to exclude other associative phenomena."

of employment. In the past, this Court has consistently held that where a mental disability results from a work-related physical trauma the disability is compensable.[3] This principle was acknowledged as early as 1923 in the case of *Harris v Castile Mining Co*, 222 Mich 709; 193 NW 855 (1923). The plaintiff in that case suffered an inguinal hernia while working in the defendant's iron mine. As a result of this personal injury the plaintiff subsequently developed a mental disorder in the form of neurasthenia.[4] In affirming an award of benefits, this Court stated that "neurasthenia caused by or attributable to the accident is a personal injury under the act." *Id.*, 712.

Later in *Redfern v Sparks-Withington Co*, 353 Mich 286; 91 NW2d 516 (1958), this Court again was faced with the question whether a psychiatric

*Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1, 23, n 8; 268 NW2d 1 (1978).

[3] Where physical trauma results in a mental disability, it is uniformly held that such a condition is compensable. See, generally, 1B Larson, Workmen's Compensation Law, § 42.22, p 7-597. For case law on point, see *Travelers Ins Co v McLellan*, 302 F Supp 351 (ED NY, 1969), *Murray v Industrial Comm*, 87 Ariz 190; 349 P2d 627 (1960), *Zurich Ins Co v Workmen's Compensation Appeals Bd*, 109 Cal Rptr 211; 512 P2d 843 (1973), *Ford Motor Co v Industrial Comm*, 357 Ill 401; 192 NE 345 (1934), *Allis Chalmers Mfg Co v Industrial Comm*, 57 Ill 2d 257; 312 NE2d 280 (1974), *Spetyla v Industrial Comm*, 50 Ill 2d 1; 319 NE2d 40 (1974), *Hartman v Cold Spring Granite Co*, 243 Minn 264; 67 NW2d 656 (1954), *Moccia v Eclipse Pioneer Div of Bendix Aviation*, 57 NJ Super 470; 155 A2d 129 (1959), *Ayub v Ideal Toy Co*, 50 AD2d 1051; 377 NYS2d 730 (1975), *Griffiths v Shaffrey*, 283 AD 839; 129 NYS2d 74 (1954), *Trgo v Harris Structural Steel Corp*, 13 AD2d 856; 214 NYS2d 791 (1961), *State of Ohio v Industrial Comm*, 83 Ohio L Abs 114; 165 NE2d 211 (1960), *Farran v Curtis Publishing Co*, 276 Pa 553; 120 A 544 (1923), and *Traders & General Ins Co v Slusser*, 110 SW2d 598 (Tex Civ App, 1937).

[4] Neurasthenia is

"[a] term once attached to a condition that was marked by chronic fatigue, sensations of pressure on the scalp, tension in the neck, pain along the spine, and an inability to concentrate. Clinical experience has shown that these are manifestations of a deep seated *anxiety reaction.*" (Emphasis in original.) Brussel, *Layman's Dictionary of Psychiatry* (New York: Barnes and Noble, Inc, 1967), p 158.

disability arising out of a work-related physical trauma was subject to the workers' compensation act. In *Redfern,* the plaintiff, a punch press operator, suffered a personal injury when a fifteen-pound weight fell off a punch press and struck the plaintiff between the shoulder blades. The plaintiff later developed a mental disability allegedly precipitated by the physical trauma. This Court held:

> In this State, the rule is well established by a line of authority dating from 1922 that where occupationally-incurred injury to the body and/or shock to the nervous system produces a neurosis resulting in disability or death, it is compensable. *Klein v Len H Darling Co,* 217 Mich 485 [187 NW 400 (1922)]; *Cazan v City of Detroit,* 279 Mich 86 [271 NW 561 (1937)]; *Laichalk v Chicago Pneumatic Tool Co,* 308 Mich 298 [13 NW2d 826 (1944)]; *Hayes v Detroit Steel Casting Co,* 328 Mich 609 [44 NW2d 190 (1950)]. [*Id.,* 299.]

In addition, this Court in *Redfern* also recognized that disabling mental conditions can be brought on at least in part by a claimant's preexisting mental deficiencies. Accordingly, this Court reasserted an undisputed principle of Michigan workers' compensation law that employers must take employees as they find them with their individual physical and mental deficiencies:

> This Court has decided, however, that a pre-existing disease does not bar recovery of workmen's compensation when subsequent occupational injury aggravates the condition to the point of disability or precipitates the disability. *Sheppard v Michigan National Bank,* 348 Mich 577;[5] [83

---

[5] This principle was well articulated by this Court in *Sheppard v Michigan National Bank, supra,* 584:

"Thus mankind is placed in 2 categories as respects recovery for accidental injuries: those with a pre-existing 'disease or condition' and

NW2d 614 (1957)]; *Coombe v Penegor,* 348 Mich 635 [83 NW2d 603 (1957)]. [*Id.,* 299.]

Finally, in the case of *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968), the rule that a mental disability resulting from physical trauma is compensable became firmly embedded in Michigan workers' compensation law. In *Johnson,* the plaintiff sustained a hernia in the course of his employment. He was subsequently released by his physician to return to work, but his employer refused to reinstate him. As a result, the plaintiff developed a functional overlay[6] with regard to a previous back condition and became unable to return to work. Citing language from *Redfern, supra,* this Court again stated that a work-related injury to the body or shock to the nervous system resulting in a mental disability or death is compensable under the act.[7] Consequently, the functional overlay was held to be a compensable disability.

In addition to the situation where a compensable mental disability results from a work-related physical trauma, other workers' compensation categories involving emotional, nervous, psychoneurotic

those not so handicapped. This classification we completely reject. Nothing is better settled in compensation law than that the act takes the workmen as they arrive at the plant gate. Some are weak and some are strong. Some, particularly as age advances, have a pre-existing 'disease or condition' and some have not. No matter. All must work. They share equally the hazards of the press and their families the stringencies of want, and they all, in our opinion, share equally in the protection of the act in event of accident, regardless of their prior condition of health. See 18 NACCA Law Journal 90-92, and cases there cited."

[6] "In lay terminology, a functional overlay describes a 'psychogenic overlay.' It is an 'emotionally determined increment to an existing symptom or disability which has been of organic or physically traumatic origin.' See 17A Words and Phrases, Functional Overlay, p 539." *Deziel (After Remand), supra,* 24, n 9.

[7] *Johnson v Vibradamp Corp, supra,* 392.

or psychotic (*i.e.,* mental) conditions have also been identified.

One such situation involves a specific mental stimulus that results in physical injury. In *Klein, supra,* this Court recognized the compensability of a physical injury caused by a specific single mental stimulus. In that case, the plaintiff accidentally dropped a piece of machinery, striking a fellow employee on the head. The plaintiff, fearful he had killed his co-worker, became nervous and upset. Eventually he became delirious, went into shock, and subsequently died. This Court awarded workers' compensation to the plaintiff's family, recognizing that the mental stimulus which occurred during his employment resulted in the plaintiff's death.

Another situation, the most difficult to assess, arises where the claimant becomes mentally disabled as the result of mental stimuli that are gradual and accumulative in nature.[8] This is exemplified by *Carter v General Motors Corp,* 361 Mich 577; 106 NW2d 105 (1960), wherein this Court was confronted with a claimant alleging a psychiatric disability resulting from the gradual stress of employment. In *Carter,* the plaintiff was unable to keep up with the pace of his job when he took one

---

[8] There exists a lack of consensus as to the compensability of a mental disability resulting from a mental stimulus or mental stimuli occurring over a period of time. See Larson, *supra,* §§ 42.23, 42.23(a) and (b), and cases cited therein. Even in jurisdictions where a mental disability resulting from a mental stimulus is regarded as compensable, some courts have distinguished between a stimulus and stimuli, imposing a different standard for mental disabilities brought on by the latter. As a general rule, the jurisdictions that have adopted this differentiation have required the claimant to establish that the mental stimuli allegedly causative of the mental disability involve greater stress and tension than that experienced in everyday employment. See Larson, *supra,* § 42.23(b). For case law on this point see *Townsend v Maine Bureau of Public Safety,* 404 A2d 1014 (Me, 1979), *Sloss v Industrial Comm,* 121 Ariz 10; 588 P2d 303 (1978), and *Swiss Colony, Inc v Dep't of Industry, Labor & Human Relations,* 72 Wis 2d 46; 240 NW2d 128 (1976).

assembly at a time to his workplace. Fearful of being laid off, the plaintiff began taking two assemblies at a time to his workplace to increase his efficiency. However, the plaintiff began mixing up the assemblies and was berated by his foreman. As a consequence of this dilemma, the plaintiff developed a mental disability. This Court recognized that the mental disability did not result from a physical trauma as in *Redfern, supra,* or a single mental shock as in *Klein, supra.*[9] Nevertheless, this Court held that the plaintiff's "disabling psychosis resulting from emotional pressures encountered by him daily in his work is compensable . . . ." *Id.,* 593.[10]

More recently, this Court again addressed the question of the compensability of mental disabilities in the case of *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975). Consolidated along with *Deziel* were *Bahu v Chrysler Corp* and *MacKenzie v General Motors Corp.*

The first two cases, *Deziel* and *Bahu* involved situations where physical trauma resulted in a mental disability. In each case there had been a physical accident, but there was no organic etiology to explain the continuing pain. Both claimants believed their disabilities were caused by the physical trauma suffered at the workplace. In *MacKenzie,* the claimant was in charge of red-tagged defective parts, but became nervous when co-employees would take the defective parts from his department and install them in cars on the assembly line. MacKenzie eventually became mentally disabled and believed that the "mental trauma" that he had been subjected to at work was the causa-

---

[9] *Carter v General Motors Corp, supra,* 585.

[10] See *Workmen's compensation—Recovery for mental disability in absence of any physical impact or injury,* 46 Iowa L R 939 (1961).

tive agent. A more detailed review of the facts and procedural history of this trilogy of cases follows.

## A. *Deziel v Difco Laboratories, Inc*

### 1. *Facts*

Mary Deziel, 39 at the time of suit, began working for Difco in 1968 handling test tubes, mixtures and various chemicals. On January 23, 1969 a test tube she was filling broke, causing glass to get into her eye. She was treated the next day and returned to work. On April 24, 1969 a test tube filled with iodine slipped from her hand and hit the table, splattering iodine around her eyes. She has not returned to work since. She made claim for compensation asserting she cannot work because of pain in the back of her eyes, anxiety, headaches, tiredness, and occasional dizziness, nausea and tightness in the chest. No physical cause for these symptoms has been found.

In her testimony before the referee Deziel denied being treated for headaches and nervousness prior to working for Difco.

However, prior to her employment with Difco, Deziel lived and worked in Ontario where she was treated by Dr. Brewer, who was deposed by Difco after the referee's decision. Brewer testified that he had treated Deziel for various ailments including headaches, anxiety, and tiredness but did not recall whether she had complained of eye problems. [394 Mich 470-471.]

### 2. *Hearing Referee and Workers' Compensation Appeal Board Decisions*

The referee accepted and adopted the disease theory of Difco's psychiatrist, Dr. Forrer, namely that Deziel has always suffered from an obsessive-compulsive character which attached to the eye injury and developed into a psychosis, called a

schizophrenic reaction. Coupled with that disease theory, the referee found that the iodine splashing "aggravated the pre-existing latent mental disorder" culminating into a total occupational disablement. He awarded compensation.

The Appeal Board in a unanimous opinion reversed the referee, holding that Deziel had not met the burden of proof to show her ailments were associated with her work, because with the exception of her eye ailments she had suffered the same symptoms since 1962. [394 Mich 471.]

The Court of Appeals denied leave to appeal.

## B. *Bahu v Chrysler Corporation.*

### 1. *Facts*

Bahu, 35 at the time of suit, was hired by Chrysler in 1967. In 1968 he worked at a stamping machine lifting and moving 1500 seven-pound parts a day from an overhead conveyor to large tubs. From September 19, 1968 through October 7, 1968 he was off work with back pains and was voluntarily paid workmen's compensation benefits. Bahu returned to work and continued to complain of pain in his back, neck, and arms and of an inability to move one of his arms. He asked for lighter work but was refused. He quit on January 4, 1969. From January 29, 1969 through part of 1970 he worked at other jobs, but quit because of pain in his back, neck and arm.

At the hearing before the referee on his claim for compensation, two psychiatrists testified. Plaintiff's psychiatrist, Dr. Dorsey, said that Bahu's physical pain was caused by pre-existing personality factors plus the precipitating events of a stressful job situation at Chrysler.

Defendant's psychiatrist, Dr. Forrer, testified that Bahu was in pain. Forrer said that the pain was not caused by or aggravated by his work at Chrysler, but rather that Bahu's personality

makeup was fragile when he came to Chrysler and he subconsciously attached his life's troubles to the event of the work-related injury. In the words of Dr. Forrer the work injury was "a convenient hook on which he can attach causation for troubles of all kinds." [394 Mich 472.]

## 2. Hearing Referee and Workers' Compensation Appeal Board Decisions

The referee, without stating any reasons, found that Bahu received a compensable personal injury, and awarded compensation from January 5, 1969 until further order.

The Appeal Board in a four to three opinion was not persuaded that Bahu's disability was causally related to his work for Chrysler. The dissenting members would have awarded compensation, finding that the requirement of job relationship was satisfied because the job provided the hook on which Bahu could hang his troubles. [394 Mich 472-473.]

The Court of Appeals denied leave to appeal.

## C. MacKenzie v General Motors Corporation

### 1. Facts

MacKenzie, 65 at the time of suit, began working for General Motors in 1924 at the age of 15. In 1965 he took an early retirement at the age of 56. For about five years prior to his retirement he worked on the day shift in a General Motors Fisher Body salvage department. His job was to count, keep track of, and ship back to vendors red-tagged defective parts. During his last two or three years with General Motors he became irritable and nervous because the afternoon shift would take defective parts from his department and in-

stall them on cars in the assembly line. This caused him to worry about the safety of new cars and required him to recount the remaining parts and account to his supervisors for the missing parts. In addition, the poor work habits of his co-worker required MacKenzie to work harder, which added to his anxiety.

He made claim for compensation. At the hearing before the referee, MacKenzie's psychiatrist, Dr. Dreyer, testified that MacKenzie suffered from a long-standing personality defect of compulsive perfectionism that centered on his job, and that eventually the job pressures disabled him. This was subjective analysis based on MacKenzie's view of his job.

General Motors' psychiatrist, Dr. Fink, testified that it was MacKenzie's perfectionistic need in conflict with the impairments of aging that produced his anxiety and that although MacKenzie perceived the stresses of the job as causing his anxiety those stresses were usual occurrences and did not cause his emotional problems. This was an objective analysis based on the normal worker's view of MacKenzie's job. [394 Mich 473-474.]

## 2. Hearing Referee and Workers' Compensation Appeal Board Decisions

The referee awarded compensation finding that, although the stresses of the job were not great enough to cause ill effects in an average person, the stress did cause MacKenzie to become disabled.

The Appeal Board in its five to two majority opinion reversed the referee and rejected the subjective analysis in favor of an objective analysis and ruled that an actual mental injury caused by a claimant's perception of his work environment is not compensable when that environment is not injurious to the average worker.

Two members of the board dissented and would have awarded compensation by applying the subjective analysis and finding that the on-the-job

stress aggravated MacKenzie's pre-existing personality disorder. [394 Mich 474.]

## D. *Deziel, Bahu,* and *MacKenzie*

On appeal to this Court, the majority reiterated the workers' compensation act requirement, MCL 418.301(1); MSA 17.237(301)(1), that injuries must arise "out of and in the course of" employment to be compensable.[11] In interpreting this statutory language this Court set forth a three-step analysis to determine the compensability of a workers' compensation claim. This Court also recognized that in each of these consolidated cases a preexisting condition existed:

> In cases such as these which are asserted to involve pre-existing conditions the question of whether a disability arose out of the employment is resolved by the fact finder only upon inquiry regarding the work connection. The legal principle to be applied is that set forth by Professor Larson in § 12.20 of his treatise, Workmen's Compensation Law, at 3-231:
> whether "the employment aggravated, accelerated, or combined with the disease or infirmity to produce the . . . disability."
> To apply that principle the decision maker must resolve three questions of fact and law:
> 1) Is the claimant disabled?
> 2) If so, is the claimant disabled on account of some "personal injury"?
> 3) Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?
> If those questions are answered in the affirmative and supported by the record, the decision maker must then find as a matter of law that the claimant had a personal injury, which arose out of

---

[11] *Deziel, supra,* 475.

the employment, and that compensation must be awarded.

By the same token, if there is support for a negative answer to any of the questions, compensation may not be awarded. With this in mind we examine the cases independently. [*Deziel, supra,* 475-476.]

Thus, this Court concluded that in these cases the Workers' Compensation Appeal Board denied compensation without clearly indicating the reasons for the denials. This Court remanded the cases, but retained jurisdiction, stating that before the law applied by the Workers' Compensation Appeal Board could be reviewed, the facts used in reaching its conclusion needed to be established in more detail.[12]

### E. *Workers' Compensation Appeal Board—On Remand*

#### 1. *Deziel v Difco Laboratories, Inc*

Plaintiff's testimony under oath is completely rebutted as to previous ailments by Dr. Brewer, a medical witness who treated her prior to her employment with the defendant and was called by the defendant for the purpose of impeachment. We have a situation where this Board has the prerogative of disregarding plaintiff's complete testimony unless her testimony is corroborated by other evidence.

This not being the case we find that plaintiff has not met the burden of proof to show her employment aggravated, accelerated, or combined with some internal weakness to produce an injury.

Plaintiff's medical problems of 1962 coincide with those now alleged to be disabling by the plaintiff. This fact negates a finding that plaintiff's

---

[12] *Deziel, supra,* 480.

disability is company-oriented in any way.

The record calls for a finding of disability and personal injury. As to employment aggravating, accelerating or combining with some internal weakness or disease to produce the personal injury we find in the negative. Other than the fact plaintiff has not worked since the second test tube dropping incident we can find little evidence to promote the plaintiff's case especially in the light of the obvious credibility gap. [*Deziel (On Remand)*, 1976 WCABO 835.]

## 2. *Bahu v Chrysler Corporation*

In summary, plaintiff may have been an emotional "accident waiting to happen," but the accident did happen (injury stipulated) and per his unimpeached testimony the residuals thereof have continued and have disabled him. That is all the plaintiff knows or all he is capable of having insight regarding. The expert witnesses tell us there is no physical disability remaining except that in plaintiff's mind a real disability [remains]. This is a psychiatric disability "precipitated" by a sequence of events including the work injury (per Dr. Dorsey), which injury was a "hook on which he can attach causation" (per Dr. Forrer).

This writer submits the Referee's awarding of partial compensation during the brief periods of subsequent employment, and an open award of weekly benefits [have] record support. There are not proofs to justify reversal.

This fact-finding, I believe, answers *affirmatively* all of the Court's test questions:

1) Is the claimant disabled?

2) If so, is the claimant disabled on account of some "personal injury"?

3) Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury? [Emphasis in original. *Bahu (On Remand)*, 1976 WCABO 968.]

## 3. *MacKenzie v General Motors Corporation*

The first two of the three questions—whether plaintiff has disability and personal injury we again answer in the affirmative (see 1972 WCABO [1370]). To the third—aggravation, acceleration or combination—we again answer in the negative. and deny compensation.

\* \* \*

Again in retrospect, perhaps the choice of the word "perception" should have yielded to a more descriptive term—hallucination. We attempted then, and now, to accept the proposition that the most ordinary stimulus can be devastating and thus compensable when it causes disability in a predisposed individual. But we attempted then, and now, to exclude situations where the claimed compensable disability arose from an imagined-perceived-hallucinated stimulus *that has not been proven existed or took place,* even in the most normal form—except in the mind of the recipient.

Applied to the facts of this case, we have psychiatric testimony that paints plaintiff as a man whose adaptive mechanisms had begun to fail. His compulsions centered around [*sic*] his job. While his characterizations of specific work situations would normally be characterized as "unrebutted," we are forced by the medical description of plaintiff's personality to find that it is *at least* as likely an inference that these were imagined. There was no corroborating testimony. Compensation is not payable simply because an employee becomes *unable* to perform or cope with his job—it hinges on whether causal relationship can be proven between that physical or mental inability (disability) and the work that has gone before.

In this case we believe and find that plaintiff brought to the workplace both his predisposition to the mental condition, *and* the internal stimulus that eventually led to his disablement. We are not convinced that this record demonstrates even the normal work duties of plaintiff as having aggra-

vated, accelerated or combined with his personality disorder to produce disability. [Emphasis in original. *MacKenzie (On Remand)*, 1975 WCABO 3372.]

### F. *Deziel (After Remand)*

Following the decisions of the Workers' Compensation Appeal Board on remand, these three cases were appealed to this Court. In *Deziel (After Remand)*, *supra*, this Court noted that the same controversial and complex issue was before it: Under what circumstances are alleged mental disorders, including but not limited to psychoneurosis and psychosis, compensable under the Workers'. Disability Compensation Act?[13] This Court then expanded on its prior decision, paying particular attention to the causal nexus requirement in the third step of the first *Deziel* analysis. Consequently, the requirements that a claimant must establish in order to obtain benefits for an alleged mental disability were redefined.

> The referees, in conjunction with the WCAB, remain charged with determining (1) whether the worker/claimant is disabled and (2) whether a personal injury (a precipitating, work-related event) occurred. This Court is only requiring that the subjective causal nexus standard be utilized in deciding (3) whether the claimant's employment combined with some internal weakness or disease to produce the disability. All three questions must be answered in the affirmative and supported by the record for compensation to be awarded. The referees and the WCAB have the competence to detect malingerers at one of these three levels of inquiry. [*Deziel (After Remand)*, *supra*, 37.][14]

---

[13] *Deziel (After Remand)*, *supra*, 21.

[14] This test to determine compensability has not been well received by some commentators. See Booms, *Workers' disability compensation*,

The third step of this Court's analysis indicated that a claimant is entitled to compensation if it is factually established that the claimant "honestly perceives" or believes some personal injury occurred during the ordinary course of his employment which caused his disability, even though his subjective perception that the alleged work-related injury caused his disability may be mistaken.[15]

This Court then enumerated five reasons why the honest-perception standard would be the proper standard to be applied in these mental disability cases. First, an objective standard would not be sufficient in mental disability cases because "almost all psychoneuroses and psychoses are, to some degree, latent in origin"[16] that involve "in most cases a constellation of psychodynamic factors," making it "almost impossible to weigh the causal significance of any one factor."[17] "Psychoneuroses and psychoses take on so many shades and forms as to show no logical pattern vis-à-vis any notion of objective legal causation." Accordingly, an objective causal nexus standard would force referees and the Workers' Compensation Appeal Boards to manipulate the causal nexus standard in order to deny or grant compensation on an ad hoc basis.[18]

The second reason was similar to the first. This

*1979 Annual Survey of Michigan Law,* 26 Wayne L R 877, 879 (1980), and Lane, Note, *Deziel v Difco Laboratories, Inc: Michigan's response in awarding worker's compensation benefits for mental injuries,* Det Col L R 173, 190-192 (1979).

See also *Bentley v Associated Spring Co,* 133 Mich App 15, 20-21; 347 NW2d 784 (1984), *McGarrah v State Accident Ins Fund Corp,* 296 Or 145; 675 P2d 159 (1983), *Williams v Western Electric Co,* 178 NJ Super 571; 429 A2d 1063 (1981), and *Hirschberg v Workmen's Compensation Appeal Board,* 81 Pa Commw 579; 474 A2d 82 (1984).

[15] *Deziel (After Remand), supra,* 26, 30-31.

[16] *Id.,* 27.

[17] *Id.,* 28.

[18] *Id.*

Court determined that the "only conceptually sound method for analyzing psychoses or psychoneuroses is to recognize that these illnesses constitute, by definition, 'subjective' injuries and disabilities."[19] This Court indicated that although individuals with mental disabilities have a distorted sense of reality, which results from unconscious mental causes, their distorted sense of reality is just as real to them as an average individual's concept of reality.[20] Thus, the subjective standard acknowledges that a claimant is misperceiving reality. "Any attempt to take the inquiry to an objective level, *i.e.,* 'did claimant's employment *really* combine with some internal weakness or disease to produce the disability?' is bound to lead to frustration and eventually ad hoc manipulation. This is true because in most cases the question is unanswerable."[21]

The third reason for the subjective standard was this Court's reasoning that case law in Michigan impliedly requires its use in mental disability cases.[22] This Court pointed to the fact that the expert medical testimony quoted from *Carter, supra,* indicated that a subjective standard was employed in determining the compensability of a mental disability claim:

> The Court, in quoting proffered psychiatric testimony, clearly employed a strictly subjective causal nexus. The Court and the psychiatrist were concerned with how the "patient saw himself," how "he really felt himself," etc.
> The Court, without precisely stating so, analyzed how this particular injured and disabled claimant perceived reality, even though it is very probable

[19] *Id.*
[20] *Id.,* 29.
[21] *Id.,* 31.
[22] *Id.*

that, due to latent psychoses, he misperceived his employment situation.[23]

Moreover, this Court agreed with Judge BRONSON's dissent in *MacKenzie* which "recognized [that] the critical causal nexus is ultimately dependent upon how Carter himself, a psychotic, perceived or misperceived the relationship between his disability/injury and his work environment. The analysis employed comports with our strictly subjective standard."[24]

The fourth justification for the subjective stan-

[23] *Id.*, 32.

"The Carter case was controversial because, as the minority opinion stated, 'There was nothing in this case identifiable as an occupational risk. The job was a simple job and the foreman's instructions were even simpler. Nothing more emanated from the employment. The disability arose out of the plaintiff's own feelings and misapprehension and from within himself completely.'

"The Carter case is now more than twenty years old, and the recent research in the biology and genetics of mental illness would appear to confirm the minority opinion. Schizophrenic psychoses of the type that Carter appears to have suffered are now known to have a genetically inheritable predisposition, with characteristic history, course, and prognosis, and are not caused by job stresses. Symptoms may be unmasked or aggravated, however.

"The Carter decision and those that followed brought outcries that the original purpose of workers' compensation had been perverted and that the system was becoming 'social sickness insurance,' the cost of which was being borne unjustly by industry and the consumer. Obviously, society must draw a line at some point to distinguish between those employees hurt while on the job, and those who suffer some nonoccupational injury. Through the years and across the country, courts have not agreed on this issue. The principles of forensic psychiatric practice should hold in this area as in others. *The expert should perform a careful evaluation, rely on extensive collateral information, and be as specific as possible when making a diagnosis of mental illness and forming an opinion regarding the degree of mental impairment that may have resulted from occupational factors.*" (Emphasis added.) 3A Lawyers' Medical Cyclopedia (3d ed), § 17.35, pp 66-67.

See, also, Selzer, *Psychological stress and legal concepts of disease causation,* Cornell L R, Vol 56:951, § III, pp 954-958 (1971), and Brill & Glass, *Workmen's compensation for psychiatric disorders,* 193 JAMA 345 (August 2, 1965).

[24] *Id.*, 33.

dard of causality was a judicial recognition that
remedial legislation such as workers' compensa-
tion acts, "should always be read progressively or
liberally."[25] Thus, compensation in mental disabil-
ity cases should take "preference over any subsid-
iary doubts about the existence of an objective
causal nexus."[26]

The final justification for requiring a subjective
standard arose from anticipated responses from
employers that an application of this standard
would encourage malingering, shamming, and
fraud.[27] This Court, in addressing this concern,
stated, inter alia, that

> the referees, with the assistance of expert psychi-
> atric testimony and under the watchful eye of the
> WCAB, are skilled in detecting malingerers at the
> fact-finding level:
> "In the last analysis, the problem of malingering
> is one of fact, which must be left to the skill and
> experience of medical and psychiatric experts, and
> of compensation administrators, who usually man-
> age in time to develop considerable facility in
> detecting malingerers at the factfinding level." See
> Larson, 23 Vanderbilt L Rev 1259.[28]

---

[25] Id., 34.

[26] Id., 35.

[27] Id.

[28] Id., 36-37.

After elaborating on the causation standard set forth in the first
Deziel opinion, this Court then applied the honest-perception standard
to the WCAB decisions on remand. It was concluded in Deziel and
MacKenzie that, had the strictly subjective standard been utilized by
the WCAB, compensation would have been awarded. Therefore, be-
cause there was no competent evidence to support the board's findings
of fact, this Court vacated the orders of the WCAB which had found no
compensable disability and remanded the cases again to the board for
decision, jurisdiction not being retained. 403 Mich 37, 43. In Bahu,
this Court upheld the WCAB's award of compensation stating that the
board's decision supported the conclusion that the claimant honestly
perceived the work-related personal injury to be the cause of the
disability. 403 Mich 41-42.

### III

### STANDARDS

In revisiting *Deziel (After Remand),* it should be this Court's purpose today to carry out the spirit and intent of the Workers' Disability Compensation Act by setting forth a reasonable and equitable standard for determining a compensable mental disability claim. I would hold that in order for a claimant to recover benefits for an alleged mental disability under the act the following standards must be met:

1) The claimant-worker must be disabled. And, further, the claimant's mental disability must be established by a preponderance of the evidence. Given the abstract and complex nature of mental disabilities, expert testimony must be produced by the claimant to establish the mental disability.[29]

2) The claimant must establish by a preponderance of the evidence, as a matter of objective reality, that a precipitating physical trauma, event or events actually occurred. Precipitating physical trauma, event or events are the "personal injury" as set forth in MCL 418.301(1); MSA 17.237(301)(1). "Personal injury" includes physical trauma (*Harris, Redfern,* and *Johnson, supra*), an event, *i.e.,* a mental stimulus (*Klein, supra*), or events, *i.e.,* mental stimuli over a period of time (*Carter, supra*).[30] In dealing with a situation where the claimant is alleging a mental disability as a result of the continuing stress of employment occurring over a period of time, general conclusions of stress

[29] See, generally, 3 Larson, Workmen's Compensation Law, § 79.54, *When medical testimony [is] indispensible.* Regarding medical expertise relating to psychiatric disabilities, see § 79.54(h).

[30] "Personal injury" in the form of physical trauma, a mental stimulus, or mental stimuli over a period of time will hereafter be referred to in this opinion as physical trauma, event or events.

and anxiety would not satisfy this requirement. There must be specific incidents, shown in enough detail for the factfinder to determine that the specific events actually occurred.[31] In addition to the establishment by a preponderance of the evidence that the precipitating physical trauma, event or events were objective occurrences, I would also require that the precipitating physical trauma, event or events, be established as work-related. Consequently, if the precipitating physical trauma, event or events, or the relationship between the precipitating physical trauma, event or events, and the employment, was imaginary, delusional, or hallucinatory, this second requirement would not be satisfied.[32]

3) Finally, given the establishment by a preponderance of the evidence of a mental disability and of a precipitating work-related physical trauma, event or events, I would hold that the claimant then must establish by a preponderance of the evidence, that the precipitating work-related physical trauma, event or events, to a *substantial* degree, aggravated, accelerated, or combined with some internal weakness or disease of the claimant to produce the mental disability.[33] The claimant would be required to produce expert testimony to establish that the precipitating work-related physical trauma, event or events were stressful to the claimant and that there was a substantial causal nexus, the psychodynamics of which could be identified and elucidated by expert testimony to a

[31] This language parallels that set forth in *Miklik v Michigan Special Machine Co,* 415 Mich 364, 370; 329 NW2d 713 (1982).

[32] The claimant need not produce expert testimony to establish, by a preponderance of the evidence, that the precipitating work-related physical trauma, event or events were objective occurrences.

[33] Aggravated, accelerated, or combined with, is language synonomous with taking the employee as he is found. See 1 Larson, Workmen's Compensation Law, § 12.21, p 3-336.

reasonable degree of psychiatric certainty, between the precipitating work-related physical injury, event or events, and the mental disability.[34]

This third requirement would effectively replace the honest-perception test of *Deziel (After Remand)* in determining the establishment of a causal nexus between a precipitating work-related physical trauma, event or events, and a mental disability. In my reevaluation of *Deziel,* I conclude that a change in this area of the law is necessary.

In *Deziel (After Remand),* this Court pointed out that a constellation of factors were involved in a mental disability case and that it might be very difficult for modern psychiatric medicine to weigh the causal significance of any one factor's effect in producing the mental disorder and resulting disability.[35] This determination led this Court to hold that an objective causal nexus standard would not be sufficient and that an honest-perception standard to prove the causal nexus, under the circumstances, would be the appropriate requirement.[36]

> Under a "strictly *subjective* causal nexus" standard, a claimant is entitled to compensation if it is factually established that claimant *honestly* perceives some personal injury incurred during the ordinary work of his employment "caused" his disability. This standard applies where the plaintiff alleges a disability resulting from either a physical or mental stimulus and honestly, even though mistakenly, believes that he is disabled due to that work-related injury and therefore cannot resume his normal employment. [Emphasis in original. *Deziel (After Remand), supra,* 26.]

However, in the subsequent practical application

[34] See n 29.

[35] *Deziel (After Remand), supra,* 28.

[36] *Id.,* 30-31.

of this standard by lower tribunals, the claimant has been allowed to mechanically select a personal injury or event, declare it to be the cause of his disability and receive compensation. Essentially, the honest-perception standard, as it has been applied, provides the claimant with the medical authority to determine what caused his disability, when, by definition, the claimant may misperceive reality. The claimant's judgment about the supposed causes of his disability may be products of that very disability and cannot be given the same credence as that of informed expert psychiatric judgment as to the substantial cause of the mental disability.

Therefore, I am persuaded that the Workers' Disability Compensation Act requirement that an injury must arise out of and in the course of employment to be compensable necessitates more evidence causally connecting the injury with the occupation than the claimant's honest perception. It may be true that psychiatry is not an exact science and thus, it may be difficult for modern psychiatric medicine consistently to determine in individual cases the degree of the causal nexus between employment and the disability. Nevertheless, it is still the best source available to the finder of fact, given the complex nature of mental disability claims.

In addition, the reasoning that mental disabilities are to some degree latent in origin, involving a "constellation" of psychodynamic factors making it impossible to weigh the causal significance of any one factor, ignores the existence of the claimant's total life circumstances and concentrates on the employment in determining causation. In many instances significant stress is apparent elsewhere. This includes, but is not limited to, marital problems, family problems, financial problems,

physical problems, the aging process, and drug and alcohol problems. The honest-perception standard has proved too simplistic in practice and does not take into consideration other factors that may, in fact, be causative of the mental disability. Consequently, the claimant can attribute his life's troubles to a work incident or incidents in order to "remedy" the major problems in his life.

> A person afflicted with a mental disorder will, almost as a matter of course, claim precipitating trauma as a more palatable explanation of his or her symptoms. Responsibility for the inability to resolve mental and emotional conflicts may be shifted quite unconsciously to the employment. It makes for satisfactory results—a socially acceptable disability, freedom from responsibility, financial compensation, sympathy and understanding— and creates a secure external environment. The inability consciously to accept the fact that he or she is neurotic leads to the claimant's search for a more psychically pleasing excuse for his problems. [*Deziel (After Remand), supra* (COLEMAN, J., *dissenting*), 55-56.]

Moreover, the honest-perception standard does not take into consideration the possibility that a claimant may have had a history of psychiatric problems.[37] In many instances, psychiatric problems existed prior to the allegedly precipitating work-related physical trauma, event or events, or even prior to the commencement of the employment itself. Again, under the honest-perception standard, the claimant need only honestly perceive the disability to be work-related, and, for all practical purposes, any previous mental problems are irrelevant to the issue of causation. Because the standard set forth in my opinion requires the

---

[37] *The Psychiatric factor in compensation cases,* 193 JAMA 389 (August 2, 1965).

claimant to produce expert medical testimony to establish a substantial causal link between the employment and the disability, the psychiatric history of the claimant would become an important element in connection with expert psychiatric opinions in determining causality which, in turn, would aid the factfinder's search for the true cause of the disability.

Finally, it is important to note that rehabilitation of an employee is an important public policy factor embedded in the Workers' Disability Compensation Act.[38] The honest-perception standard awards compensation on the basis of the claimant's subjective interpretation of his disability, thus rewarding the claimant for his neurotic assessment of his condition. In effect, the honest-perception standard places its stamp of approval on the employee's disability. In many instances, the rehabilitation of a patient involves insight-oriented therapy wherein the patient's realization of the true causes of his disability is a step toward the cure. However, the honest-perception standard acts as a kind of psychological reinforcement which, in many cases, will be antitherapeutic and thus further delay any hope of the claimant's return to work. See discussion, 3A Lawyers' Medical Cyclopedia (3d ed), § 17.34, pp 61-66, § 18.21(C), pp 151-156, Moritz & Helberg, *Trauma & Disease,* and Pokorny & Moore, *Neuroses & Compensation* (Brooklyn, NY: Central Book Co, 1959), pp 104-112.[39]

---

[38] See MCL 418.319; MSA 17.237(319) and MCL 418.901-418.941; MSA 17.237(901)-17.237(941).

[39] See, also, Cohen, *Workmen's compensation awards for psychoneurotic reactions,* 70 Yale L J 1129, 1147-1150 (1961).

## IV

### CONCLUSION

Upon reevaluation of the previous standards for a compensable mental disability claim as set forth in *Deziel (After Remand),* I conclude that a change in this area of the law is necessary. The honest-perception standard, although an apparently viable standard at its inception, has proven upon practical application not to be in accordance with the intent of the Workers' Disability Compensation Act. I believe that by requiring expert testimony to establish by a preponderance of the evidence a substantial causal nexus between employment and a proven mental disability, the spirit and philosophy of the act will be carried out. I recognize and reaffirm the established precept that mental disabilities can arise from a physical trauma (*Harris, Redfern,* and *Johnson, supra*), from a specific mental stimulus (*Klein, supra*), or from mental stimuli over a period of time (*Carter, supra*). Moreover, I recognize and reaffirm the long-standing principle of Michigan's workers' compensation law that employers must take employees as they find them. The purpose of the standards set forth in this opinion are to make possible the award of benefits to all those entitled to receive them, while at the same time eliminating grants of benefits to those claimants whose disabilities do not arise "out of and in the course of" employment. Further, the standards articulated in this opinion would be applicable to all mental disability cases with a "personal injury" date prior to January 1, 1982, yet to be filed, filed but yet to be heard by the hearing referee, and also to those now pending wherein the issue was preserved for appeal.

My treatment of this issue would render it

unnecessary to address the remaining issues raised by appellant, Michigan Bell Telephone Company.

Accordingly, I would reverse the judgments in *Peters* and *Morrish* and remand the cases for proceedings consistent with this opinion.

I would award no costs, a public issue being involved.

RYAN, J. I concur with Justice RILEY's dissenting opinion in all but one respect.

The dissenting opinion would hold that "expert testimony *must* be produced by the claimant to establish the mental disability," (*ante,* p 623) and that "[t]he claimant would be *required* to produce expert testimony to establish that the precipitating work-related physical trauma, event or events were stressful to the claimant and that there was a substantial causal nexus, the psychodynamics of which could be identified and elucidated by expert testimony to a reasonable degree of psychiatric certainty, between the precipitating work-related physical injury, event or events, and the mental disability." (*Ante,* pp 624-625.) (Emphasis added.)

While expert testimony may in fact be necessary, in the large majority of cases, to establish a compensable mental disability, I cannot agree with the adoption of a per se rule automatically requiring such testimony. First, there is nothing in the Workers' Disability Compensation Act supporting such a requirement. Chapter 8 of the act, particularly § 853, MCL 418.853; MSA 17.237(853), regulates process and procedure before the hearing referee and the WCAB. None of these provisions can be interpreted as requiring the introduction of expert testimony in order to prove a psychiatric disability claim.

Second, while this Court has held that expert

testimony is generally required to establish a cause of action for medical malpractice, it has also recognized an exception in "cases where the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the standards of professional practice and care employed in the community." *Lince v Monson,* 363 Mich 135, 140-141; 108 NW2d 845 (1961). Similarly, there is the possibility that a mental disability may be so clearly manifest that it could be established through the use of lay testimony, such as that of family members. Lay testimony may be competent evidence of a mental condition. See, *e.g., Beaubien v Cicotte,* 12 Mich 459 (1864); *People v Murphy,* 416 Mich 453, 465; 331 NW2d 152 (1982); see also 31 Am Jur 2d, Expert and Opinion Evidence, § 85; Anno: *Requisite foundation or predicate to permit nonexpert witness to give opinion, in a civil action, as to sanity, mental competency, or mental condition,* 40 ALR2d 15.

For these reasons, I would not adopt Justice RILEY's per se rule requiring expert testimony in mental disability cases.

BRICKLEY, J., concurred with RYAN, J.