GARDNER v VAN BUREN PUBLIC SCHOOLS

BOYLE v DETROIT BOARD OF EDUCATION

BACH v FLINT BOARD OF EDUCATION

Docket Nos. 95531, 95532, 95536. Argued November 3, 1993 (Calendar Nos. 11-13). Decided April 19, 1994. Rehearings denied in *Gardner* and *Boyle, post,* 1205.

Anthony Gardner sought worker's compensation benefits, alleging mental disability that arose out of and in the course of his employment with the Van Buren Public Schools. The Worker's Compensation Appeal Board affirmed an award of benefits, finding that the plaintiff suffered a personal injury as a result of actual events that contributed to his mental disability in a significant manner. The Court of Appeals, DOCTOROFF, C.J., and CORRIGAN, J. (JANSEN, J., dissenting), reversed (Docket No. 134246). The plaintiff appeals.

Thomas Boyle sought worker's compensation benefits, alleging mental disability that arose out of and in the course of his employment with the Detroit Board of Education as a result of a mental breakdown caused by mistreatment from students, co-workers, and administrators. The Worker's Compensation Appeal Board affirmed a denial of benefits, finding that the plaintiff had not established a work-related personal injury that arose out of actual events of employment. The Court of Appeals, DOCTOROFF, C.J., and CORRIGAN, J. (JANSEN, J., dissenting), affirmed (Docket No. 130188). The plaintiff appeals.

Donna L. Bach sought worker's compensation benefits, alleging mental disability that arose out of and in the course of her employment with the Flint Board of Education. The Worker's Compensation Appeals Board affirmed a denial of benefits, finding the disability unrelated to actual events of employment accurately perceived by the plaintiff. The Court of Appeals, DOCTOROFF, C.J., and CORRIGAN, J. (JANSEN, J., dissenting), affirmed, concluding that the evidence, when viewed objec-

REFERENCES

Am Jur 2d, Workers' Compensation § 340.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

tively, did not support a claim for compensation (Docket No. 135270). The plaintiff appeals.

In an opinion by Chief Justice CAVANAGH, joined by Justices LEVIN, BOYLE, and MALLETT, the Supreme Court *held:*

To establish a compensable mental disability claim under MCL 418.301(2); MSA 17.237(301)(2) arising on or after January 1, 1982, a claimant must prove a mental disability arising out of the actual events of employment and not unfounded perceptions of the events, and that the events contributed to, aggravated, or accelerated the mental disability in a significant manner.

1. Mental disabilities are compensable under MCL 418.301(2); MSA 17.237(301)(2) where they are based on actual, not imaginary, events of employment that contributed to, aggravated, or accelerated the disability in a significant manner. A claimant actually must prove a significant factual causal connection between the events and the disability. Causation is determined by the factfinder, who must consider the totality of the occupational circumstances along with the totality of a claimant's mental health in general, including comparison of nonemployment and employment factors. Once actual employment events have been shown to have occurred, the significance of those events to the particular claimant must be judged against all of the circumstances to determine whether the resulting mental disability is compensable.

2. Employers must take employees as they find them, with all preexisting mental and physical frailties. A claimant's preexisting condition will not bar recovery. Actual events of employment, even if ordinary, can be injurious to the mental health of a predisposed individual. Although the events must be objectively proven to have occurred, and not be based on subjective, imaginary beliefs, by focusing on the individual worker, as opposed to an average worker, both the significant manner requirement and the actual events requirement have substantial subjective elements. It is therefore irrelevant how a reasonable person would react to an objectively established actual event. The inquiry places the focus on the authenticity of the underlying event and the significance of its relationship to the resulting disability.

3. In these cases, the Court of Appeals applied a purely objective standard. In *Bach* and *Boyle,* the WCAB applied a purely objective standard as well, requiring reversal and remand for further proceedings. Because the WCAB applied the correct legal analysis in *Gardner,* its holding is affirmed, requiring reversal of the judgment of the Court of Appeals.

*Gardner,* reversed.

*Boyle,* reversed and remanded.

*Bach,* reversed and remanded.

Justice BRICKLEY, concurring in part and dissenting in part, stated that in amending MCL 418.237(301)(2); MSA 17.237(301)(2) to demand that mental disability claimants establish actual events of employment, not unfounded perceptions of events, the Legislature sought to create a standard of causation that incorporated greater substantive objectivity.

It is clear from the language of the statute that actual employment events must exist to recover for a mental disability. To give effect to this language, "unfounded perceptions" must refer not to the existence of an event, but to a claimant's interpretation or perception of an actual event. This requires that a claimant's perception of the actual event not be unfounded. Causation must be based in part on founded perceptions of actual events. This interpretation demands that a hybrid of subjective and objective considerations be applied to three facets of a person's mental disability claim: the existence of the event, the claimant's perception of the event, and the claimant's reaction to the event. Objective analysis is reflected in the requirements that actual events of employment have occurred and that the claimant's perception of those events are well-founded. Both must be discerned by an objective trier of fact, not the claimant. Once so established the claimant's reaction to the events is judged subjectively, taking into account all the claimant's preexisting infirmities and disabilities.

When this interpretation is applied in these cases, in *Gardner,* the decision of the Court of Appeals should be reversed, and the decision of the WCAB, affirmed; in *Boyle,* the decisions of both the Court of Appeals and the WCAB should be reversed and the case remanded to the WCAB for further proceedings; in *Bach,* the decision of the Court of Appeals should be affirmed.

Justice RILEY, joined by Justice GRIFFIN, dissenting, stated that the majority advocates a highly subjective standard for work-related mental disabilities, contrary to the 1980 amendments of the worker's compensation act. A claimant for a work-related mental disability must establish by a preponderance of the evidence, as a matter of objective reality, an actual and traumatic event; otherwise, the danger that the alleged harm is a mere manifestation of an underlying problem and not a cause is too great. A successful claim should require proof of specific incidents and not merely general conclusions of stress, anxiety, or exertion over a period of time. Without a recognizable, stressful event or at least a physical manifestation of injury occurring close in time to the alleged event, it would be

virtually impossible to determine with a fair degree of certainty whether the allegations of work-related injury are actualities or misperceptions in the absence of expert testimony. The effect of the majority view is to make employers the insurers of their worker's wage losses for mental disabilities without necessarily establishing an adequate causal link.

197 Mich App 247; 494 NW2d 815 (1992), reversed.
197 Mich App 255; 494 NW2d 818 (1992), reversed.
197 Mich App 265; 494 NW2d 845 (1992), reversed.

WORKER'S COMPENSATION — MENTAL DISABILITIES — ACTUAL EVENTS OF EMPLOYMENT.

To establish a compensable mental disability claim arising on or after January 1, 1982, a claimant must prove a mental disability arising out of the actual events of employment, and not unfounded perceptions of the events, and that the events contributed to, aggravated, or accelerated the mental disability in a significant manner (MCL 418.301[2]; MSA 17.237[301][2]).

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs, Robert G. Hodges,* and *Granner S. Ries*), for plaintiffs Gardner and Boyle.

*Thurswell, Chayet & Weiner* (by *Lenny Segel* and *Tammy J. Reiss*) for plaintiff Bach.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for defendant Van Buren Public Schools.

*Charfoos, Reiter, Peterson, Holmquist & Pilchak, P.C.* (by *Daniel Peterson* and *Deborah S. Dorland*), for defendant Detroit Board of Education.

*Richard E. Cooley* for defendant Flint Board of Education.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Elaine D. Fischhoff,* Assistant Attorney General, for Accident Fund of Michigan.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

*Glotta, Rawlings & Skutt, P.C.* (by *Richard M. Skutt*), for Michigan Injured Workers.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs* and *Roberta H. Pullum*), for Michigan State AFL-CIO and Detroit Federation of Teachers, *Mark H. Cousens* for Michigan Federation of Teachers, and *White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *James A. White*), and *Kelman, Loria, Downing, Schneider & Simpson, P.C.* (by *Donald W. Loria*), for Michigan Education Association.

CAVANAGH, C.J.

## I. INTRODUCTION

The issue presented in these cases calls upon the Court to construe MCL 418.301(2); MSA 17.237(301)(2).[1] Specifically, we must decide whether the statute requires an objective or subjective analysis when examining the significance of "actual events of employment" in determining the compensability of mental disabilities.

We hold that to establish a compensable mental disability claim, pursuant to MCL 418.301(2); MSA 17.237(301)(2), a claimant must prove: (1) a mental disability; (2) arising out of the actual events of employment, not unfounded perceptions thereof;

---

[1] Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

and that (3) those events contributed to, aggravated, or accelerated the mental disability in a significant manner.

All that is statutorily required are "actual events of employment," even if objectively unimportant, that contribute to, aggravate, or accelerate a mental disability in a significant manner.

Although the statutory test embodied in MCL 418.301(2); MSA 17.237(301)(2), does contain objective elements, it is not a purely objective test. If one concentrates on the individual worker, as opposed to an average worker, the statutory test has substantial subjective elements as well.

## II. FACTS AND PROCEDURAL HISTORY

All three of these worker's compensation cases involve mental disability claims based on MCL 418.301(2); MSA 17.237(301)(2). All the plaintiffs allege that events and or stress from their respective jobs contributed to, aggravated, or accelerated their mental disability. All three claim a date of injury after January 1, 1982, the effective date of MCL 418.301(2); MSA 17.237(301)(2).

There being no showing of fraud, we take the factual findings of the Worker's Compensation Appeal Board as conclusive. Const 1963, art 6, § 28.

### A. BACH v FLINT BOARD OF EDUCATION

Plaintiff worked for two years as a secretary for one of defendant's elementary schools where Sandra Epps was the principal. She testified that her relationship with Epps initially was cordial. In fact, her first performance review conducted by Epps indicated that she was a satisfactory employee. However, plaintiff soon began to feel alien-

ated. She testified that her emotional and physical problems began in late September or early October of 1981.

Plaintiff felt that Epps was unresponsive to her questions, and she claimed that, at times, Epps snapped at her or answered her questions harshly. Plaintiff also alleged that a number of specific work events added to her feelings of alienation.

One such event occurred when Epps had all members of the staff switch jobs for half a day. Plaintiff performed the duties of a math teacher. She claimed that this made her feel uncomfortable because teaching math was not her job. Another event occurred when Epps had plaintiff tell a substitute teacher that the teacher was fired. Plaintiff initially refused, but Epps told her to think of some excuse and eventually made her dismiss the substitute. Plaintiff claimed that this event upset her. Similarly, she also claimed that Epps had her tell callers that Epps was not in when she was, and that this made her feel uneasy.

Another event involved a school bulletin board. Plaintiff maintained a bulletin board and changed the posted information monthly. Once, when school district administrators were visiting, Epps took responsibility for the bulletin board herself. Plaintiff felt that Epps had done a poor job on the bulletin board and that Epps had shown it off as a "fantastic job." Epps failed to acknowledge plaintiff's contribution in the day-to-day maintenance of the bulletin board. This upset her.

One of the most significant events involved plaintiff's second performance review. She was disturbed by the fact that the second review showed no improvement. She felt that she had made significant improvement in her performance between reviews. Epps' failure to acknowledge plaintiff's perceived improvement upset her. Al-

though she did not say anything at first, she eventually did write a letter to Epps indicating her disappointment. When Epps failed to acknowledge receiving the letter, she approached Epps about the issues she had raised. Plaintiff and Epps discussed the letter, but she left with the impression that the discussion had been fruitless. Their relationship continued to deteriorate after that meeting.

Plaintiff developed headaches and stomach pains, had irregular sleeping patterns, and became depressed. She lost weight, stayed in bed, and stopped doing household chores. After December 1981, she only went to work one or two times a week. Her mental condition steadily worsened. Her last day of work was February 3, 1982.

Epps testified that she was never aware of plaintiff's discomfort. Epps explained her telephone policy, that plaintiff had seemed to enjoy switching jobs for a half day, that numerous people shared responsibility for the bulletin board, and that she deleted some of the comments she made in plaintiff's second performance review after meeting with plaintiff.

Expert testimony went both ways regarding whether plaintiff was mentally disabled. Two doctors diagnosed two different forms of depression; another believed plaintiff was not suffering from any active psychiatric disorder.

The WCAB denied plaintiff's claim because, under MCL 418.301(2); MSA 17.237(301)(2), it was not convinced that plaintiff's disability was related to actual events of employment that plaintiff accurately perceived. The Court of Appeals affirmed the decision of the WCAB.

Actual "events" did occur in the course of plaintiff's employment. But the meaning plaintiff

ascribed to these events, which was the basis for
the concerns that led to her claimed disability, was
not necessarily accurate. There was no convincing
showing that Epps was dissatisfied with plaintiff's
work or that Epps would not willingly answer
plaintiff's questions. There was no convincing evi-
dence showing that plaintiff's working relation-
ship with Epps deteriorated as plaintiff thought it
did. [197 Mich App 247, 251; 494 NW2d 815
(1992).]

That Court concluded that the evidence, when
viewed from an objective standard, did not support
plaintiff's claim for compensation.

### B. *BOYLE v DETROIT BOARD OF EDUCATION*

For nearly thirty years, plaintiff worked for
defendant as a teacher. During the bulk of his last
fifteen years, he was an art teacher at Cooley High
School.

Plaintiff testified that his mental distress began
in the seventies. Student conduct markedly de-
clined, and his art class became a "dumping
ground" for problem students who were failing
other subjects. He flunked eighty to ninety percent
of his students in some classes because of high
absenteeism or inattention. He testified that tardi-
ness was also a serious problem; students in his
first-hour classes would straggle in thirty or forty
minutes late. Plaintiff found the tardiness problem
to be very stressful.

Plaintiff was also upset by incidents that oc-
curred in his classroom when he was not using it.
He shared the room with another teacher, Robert
Williams. Plaintiff felt that Williams did not main-
tain proper control of his students. He alleged that
Williams let his students carve their initials on
the tables and let paint drip on the chairs and

floor. He reported his concerns to the director of the art program, but apparently nothing came of it.

Cutbacks in the art department's budget meant the cancellation of plaintiff's advanced classes. This left him with students who only took his basic art class because they needed an elective course, art being one of the few electives available. Plaintiff called his advanced classes the bright spot of his day. After the cancellation of those classes, he became increasingly depressed by the caliber of students he was left to teach.

Plaintiff was also troubled by actions of the faculty and administration. He believed that some teachers had sex with students. He regarded such relationships as unprofessional.

Plaintiff started to use sick days so that he would not have to go to work. He began drinking heavily during the last four to five years of his employment. On October 28, 1983, he was helping a student draw a face when his hand began to shake uncontrollably. He went home after work and proceeded to go on a rampage. He destroyed his apartment and apparently attempted suicide.

On November 10, 1983, plaintiff was admitted to Woodside Medical, a facility described by the WCAB as being for the "emotionally disturbed and alcoholics." He was treated for alcohol dependency, given psychiatric counseling, and released on November 30, 1983.

Plaintiff briefly returned to work. January 4, 1984, turned out to be his last day of work. On that day, one of his students opened the classroom door before the bell rang. When plaintiff told him to close it, the student responded by calling him a "crazy, old loony." The remainder of the class began chanting the phrase. Plaintiff left work and never returned.

Plaintiff filed a claim for mental disability benefits, claiming his emotional breakdown was due to mistreatment he received from students, co-workers, and administrators.

The experts agreed plaintiff was disabled, but disagreed on the cause. One doctor stated plaintiff's inability to work was directly related to the stress of his employment; another attributed it to alcoholism.

The WCAB denied plaintiff benefits because, under MCL 418.301(2); MSA 17.237(301)(2), the events alleged by him did not establish that a work-related personal injury had arisen out of actual events of employment.

> Assuming that plaintiff is disabled, we are not convinced that his disability occurred in or out of the course of his employment. We find that plaintiff has failed to prove, by a preponderance of the evidence, that he has incurred a disabling injury arising out of or in the course of his employment. [Unpublished opinion of the WCAB, decided May 23, 1990 (Decision No. 645).]

The Court of Appeals affirmed.

> Workers' compensation benefits are not available just because a plaintiff establishes the existence of some incident or "event" that is upsetting to the plaintiff. There must be an injury. The Legislature has required the injury to be based upon the "actual events" of employment. Sections 301(2) and 401(2)(b). This requirement would become meaningless if the ordinary daily conditions and minutiae of employment were sufficient to support a mental disability claim. Thus, ordinary stresses of employment (existing in probably all jobs) are not sufficient to establish the required injury. [197 Mich App 255, 260; 494 NW2d 818 (1992).]

C. *GARDNER* v *VAN BUREN PUBLIC SCHOOLS*

Between 1978 and 1984, plaintiff worked as a janitor for defendant in various schools. Plaintiff had difficulties with some of his supervisors and co-workers. He cited several events during which his supervisors and co-workers allegedly had mistreated him. He complained that he was given extra work, his supervisors sometimes gave him conflicting instructions, and his co-workers were jealous of his expensive home. The thought of losing his job devastated him.

Plaintiff believed that a supervisor conspired with other employees to have him fired. He discovered that the supervisor had offered some employees time off if they would assist in discovering whether he had a second job, which was against school policy.

Plaintiff's co-workers and supervisors testified that plaintiff was a poor employee. Some of the witnesses even testified that he threatened them or their families with physical harm. Plaintiff also regularly used profanity at work.

The co-workers' testimony confirmed that plaintiff had been given extra work (along with others to compensate for layoffs), and that plaintiff's work was reduced following a grievance hearing. The testimony also showed that certain employees had been offered time off in exchange for "checking up" on the plaintiff.

Plaintiff's last day of work was June 4, 1984. He filed for mental disability benefits, alleging that constant on-the-job harassment led to his mental disability.

The experts agreed plaintiff was disabled, but again differed on the causes. One doctor stated that plaintiff's disorder was directly caused by

stress at work; the other felt it resulted from his genetic makeup.

The WCAB awarded benefits, finding plaintiff to be suffering from a compensable mental disability. It concluded that plaintiff suffered a personal injury due to the grievance proceeding and the supervisor's actions in checking up on the plaintiff. Further, it held that these two events actually occurred and that they contributed to plaintiff's mental disability in a significant manner.

The Court of Appeals reversed, finding error in the WCAB's reasoning.

> An objective analysis is used to determine whether a personal injury (usually in the form of a precipitating work-related event in mental disability cases) significantly affected an employee's mental condition. *Boyle v Detroit Bd of Ed,* 197 Mich App 255; [494] NW2d [818] (1992); *Sobh v Frederick & Herrud, Inc,* 189 Mich App 24, 28; 472 NW2d 8 (1991). As in *Sobh,* in this case the WCAB did not indicate why an objective person would find significant the two incidents that the WCAB found satisfied the requirement of a personal injury. [197 Mich App 265, 270; 494 NW2d 845 (1992).]

### III. COMPENSABILITY OF MENTAL DISABILITY IN MICHIGAN

Mental disability, in one form or another,[2] has been recognized as a compensable injury in this

---

[2] This Court, like most others in the nation, has identified at least three forms of mental disability cases. The first is exemplified by *Harris v Castile Mining Co,* 222 Mich 709; 193 NW 855 (1923), holding that when a specific work-related physical injury causes mental disability, the resulting mental disability is compensable. The second form is exemplified by *Klein v Len H Darling Co,* 217 Mich 485, 488; 187 NW 400 (1922), holding that when a specific mental stimulus ("mental shock") causes physical harm, the resulting physical harm is compensable. The third is exemplified by *Carter v General Motors*

state for over seventy years. Before the legislative amendments of the worker's compensation act in 1982, embodied in 1980 PA 357, the compensability of a mental disability arising from the ordinary events of employment was governed by a line of cases beginning with *Carter v General Motors Corp,* 361 Mich 577; 106 NW2d 105 (1960).

*Carter* involved a machine worker with a predisposition for paranoid schizophrenia. The worker filed for benefits, claiming that emotional pressures from his daily work triggered his psychosis.[3]

The central issue in *Carter* was whether a mental disability is compensable when it results from a series of ordinary employment events. The disability in *Carter* was unique because the claimant became disabled as a result of stress that gradually accumulated from ordinary events.

> [The claimant's] disability was caused by emotional pressures produced by production line employment not shown by him to be unusual in any respect,—that is, not shown by him to be any different from the emotional pressures encountered by his fellow workers in similar employment. [*Id.* at 585.]

Nonetheless, the Court found that mental disability, triggered by ordinary employment events and pressure, could be compensable.

*Carter* was expanded by this Court in the controversial *Deziel v Difco Laboratories, Inc (After*

Corp, 361 Mich 577; 106 NW2d 105 (1960), holding that mental disability resulting from the daily events and stresses of work is compensable.

[3] The specific events that contributed to Mr. Carter's mental disability resulted from the fact that he was unable to meet the demands of the job. "[W]hen he took only 1 hub assembly at a time, he fell behind; when he fell behind, he took 2 assemblies; but when he took 2 assemblies, he got the assemblies mixed up and was berated by the foreman." *Id.* at 581.

*Remand),* 403 Mich 1; 268 NW2d 1 (1978). In
*Deziel,*[4] this Court articulated a three-step inquiry
to determine the compensability of mental disabili-
ties. Under *Deziel,* a claimant had to prove: (1) a
mental disability; (2) arising out of a personal
injury (defined as a precipitating work-related
event); and (3) an honest, even if mistaken, percep-
tion that the employment-related injury was re-
sponsible for the disability. *Id.* at 35-37.

This Court determined that the proper causal
standard to be applied in mental disability cases
was a subjective one:

> We hold, as a matter of law, that in cases
> involving mental (including psychoneurotic or psy-
> chotic) injuries, once a plaintiff is found disabled
> and a personal injury is established, it is sufficient
> that a strictly *subjective* causal nexus be utilized
> by referees and the WCAB to determine compensa-
> bility. Under a "strictly *subjective* causal nexus"
> standard, a claimant is entitled to compensation if
> it is factually established that claimant *honestly
> perceives* some personal injury incurred during
> the ordinary work of his employment "caused" his
> disability. This standard applies where the plain-
> tiff alleges a disability resulting from either a
> physical or mental stimulus and honestly, even
> though mistakenly, believes that he is disabled due
> to that work-related injury and therefore cannot
> resume his normal employment. See anno: *Work-
> men's compensation: Neurasthenia as compensa-
> ble,* 44 ALR 500.
>
> The focal point of this standard is the plaintiff's
> *own* perception of reality. [*Id.* at 26. Emphasis in
> original.]

---

[4] At that time, § 301, there being no subsection (2), provided:

> An employee, who receives a personal injury arising out of
> and in the course of his employment . . . shall be paid com-
> pensation in the manner and to the extent provided in this
> act . . . .

*Deziel* expressly rejected application of an objective causal standard.

> Any attempt to take the inquiry to an objective level, i.e., "did claimant's employment *really* combine with some internal weakness or disease to produce the disability?," is bound to lead to frustration and eventually ad hoc manipulation. This is true because in most cases the question is unanswerable. [*Id.* at 31. Emphasis in original.]

Dissatisfied with the majority's subjective causal analysis, Justice COLEMAN dissented. She suggested an alternative standard:

> The relevant inquiry is whether claimant's employment did, in fact, "aggravate, accelerate or combine with some internal weakness or disease to produce the disability."[14] 1 Larson, Workmen's Compensation Law, § 12.20.
> We would add the caveat that the fact finder will have to find more than a "de minimis" relationship between the mental disorder and the occupation before awarding compensation. In other words, in light of the acknowledged relationship between symptoms and non-occupational events, the causal connection must be established in some substantial degree.

> ---
> [14] The majority rejects this query as too "objective" in nature. We cannot agree with this characterization. If one focuses upon the individual, as distinct from the "average" employee, the "aggravate-accelerate-combine" language is inherently subjective.
> ---

[*Id.* at 61.]

It appears therefore, that although Justice COLEMAN was dissatisfied with the "honest perception" causal standard, she too was reluctant to abandon a basic tenet of worker's compensation law: employers take employees as they find them. For her,

the question was not whether the employment would have caused mental disability in an "average" employee. Rather, it was whether the employment did, in fact, play a significant role in aggravating or accelerating a particular employee's mental disability.

*Deziel* was revisited briefly in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), and *Peters v Michigan Bell Telephone Co,* 423 Mich 594; 377 NW2d 774 (1985). In *Hurd,* the Court held that MCL 418.301(2); MSA 17.237(301)(2), applies to all personal injuries occurring on or after January 1, 1982. In *Peters,* the Court held that it would not reevaluate the *Deziel* standard because the legislative amendment[5] of MCL 418.301(2); MSA 17.237(301)(2), made such a reevaluation unnecessary. Additionally, this Court wanted to avoid creating a third judicial standard for mental disability cases.

### IV. THE LEGISLATIVE REACTION TO *DEZIEL*

Justice COLEMAN was not the only person dissatisfied with *Deziel.* In 1980, the Legislature amended the definition of "personal injury" under chapters 3[6] and 4[7] of the worker's compensation

---

[5] 1980 PA 357.

[6] Section 301 addresses work-related injuries; for the full text of § 301(2), see n 1.

[7] Section 401 addresses occupational diseases, and provides in pertinent part:

"Personal injury" shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. An ordinary disease of life to which the public is generally exposed outside of the employment is not compensable. Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a

act[8] by enacting 1980 PA 357. Public Act 357 amended both chapters to explicitly provide compensation for work-related mental disabilities.

In terms of understanding the purpose of 1980 PA 357, the legislative history provides some insight. Apparently, some members of the Legislature believed that the unamended statute did "not prescribe definite standards as to what constitutes compensable heart or mental disabilities." Workers' Compensation Reform Task Force, *Report of the Special Committee to Study Workers' Compensation,* December 1980, Issue No 2c. Moreover, proponents of the bill maintained that "the lack of such standards has led to reckless judicial interpretation of the disability standard as it applies to heart and mental cases resulting in compensation being paid to workers whose disability was not work related." *Id.*; see also *Dean v Chrysler Corp,* 434 Mich 655, 666-667; 455 NW2d 699 (1990).

So it was the lack of legislative standards combined with "reckless" judicial interpretations that led the Legislature to consider comprehensive reform of the worker's compensation act. A part of that reform was SB 1044, which became 1980 PA 357. The legislative analysis of SB 1044 notes that the act was intended to

> limit compensation for heart conditions and mental disability to cases where employment is shown to have contributed significantly to the condition.
>
> *     *     *
>
> After December 31, 1981, mental disabilities and conditions of the aging process including heart

significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof. [MCL 418.401(2)(b); MSA 17.237(401)(2)(b).]

[8] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

and cardiovascular conditions will be compensable only if contributed to or aggravated or accelerated by the condition of employment in a significant manner. Mental disability will be compensable if it arises out of actual events of employment; an employee's unfounded perceptions of the employment and its relationship to a mental disability will not be sufficient to substantiate a claim for compensation. [Senate Analysis Service, SB 1044, Second Analysis, January 7, 1981.]

Insight into legislative intent is also provided by examining the economic conditions of the early eighties which fueled much of the political debate concerning comprehensive worker's compensation reform.

Beginning in late 1979, Michigan's economy had begun to slow. As the nation moved into a recession, the resulting downturn in auto production started to have a severe effect on the general public in terms of high inflation and high [un]employment. . . . By early 1980 Michigan's economic problems were clearly going from bad to worse, and some individuals and groups not usually concerned about the state's "business climate" began to express some concern that the legislature should do something about the real or perceived problem of workers' compensation in an effort to forestall any further plant closings or relocations. [VanderLaan & Studley, *Workers' compensation reform: A case study on the legislative process in Michigan,* 14 U Mich J L Ref 451, 454 (1981).]

Several senators made comments on the senate floor regarding the motivation behind the reform movement. Senator Welborn noted:

Since 1979, and prior to that, 1978 during the elections, everybody said that worker's compensation is the highest priority in the State of Michi-

gan. We cannot afford to lose industry and jobs in this state. [1980 Journal of the Senate 820.]

Echoing these sentiments, Senator Guastello commented:

I think we, in Michigan, are leading the nation and perhaps the tip [sic] into one of the most serious economic dilemmas, if not depressions, that this country has ever seen. . . . I think it is incumbent upon all of us who serve here today to do everything that we can do, personally, practically and expediently to solve the problems facing the business community in the State of Michigan . . . . [1980 Journal of the Senate 822.]

Although most agree that 1980 PA 357 was meant to be a substantive change in the law, tightening the requirements for compensable mental disabilities, there is little agreement about exactly what that change means.

### V. DISCUSSION

#### A

We begin by acknowledging the obvious: the Legislature has seen fit to make mental disabilities compensable under this state's worker's compensation act. Worker's compensation law is an area of the law committed to the discretion of the Legislature. The ultimate social and economic goals of the worker's compensation act are for the Legislature, not the courts, to decide. Our duty is merely to determine whether a particular disability is compensable, given the statutory scheme.

Thus the only task facing this Court is to determine what standards are mandated by MCL 418.301(2); MSA 17.237(301)(2). In so doing, this Court need not hone the analytical knife sharper

than the statutory language requires. *Deziel, supra* at 60, n 13 (COLEMAN, J., dissenting).

The statutory provision at issue in these cases provides:

> Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. *Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.* [MCL 418.301(2); MSA 17.237(301)(2). Emphasis added.]

### B

Initially, we are faced with the problem of distinguishing between "actual events of employment" and "unfounded perceptions thereof." A basic maxim of statutory construction is that statutes are to be construed to avoid absurd results. *Franges v General Motors Corp,* 404 Mich 590, 612; 274 NW2d 392 (1979). Although we make no attempt in this opinion to define what a "mental" disability is, we are cognizant of the fact that to some degree many, if not all, mental disabilities are based on "unfounded perceptions" of "reality" or "actual events." An unfounded perception of reality is the very characteristic that distinguishes a mentally disabled person from a "normal" person.

> In finding solutions to their unconscious problems, psychoneurotics and psychotics develop personality problems which make it difficult for them to adapt to reality as it is encountered by so-called "average" or "normal" individuals. This failure of the psychoneurotic or psychotic's reactions and

adjustment mechanisms can either distort his perception of reality or, in the worst psychotic cases, cause the individual to lose contact with reality . . . . [*Deziel, supra* at 29. See also *Peters, supra* at 626 ("by definition, the [mental disability] claimant may misperceive reality") (RILEY, J., dissenting).]

Thus if one reads MCL 418.301(2); MSA 17.237(301)(2) as prohibiting compensation for claims based on unfounded perceptions of actual events, as opposed to prohibiting compensation for claims based on imagined or hallucinatory events, then one is left with a statute that makes little sense. Where the first part of the provision states that certain work-related mental disabilities *shall* be compensable, the last part excludes the vast majority of all mental disabilities, those based on unfounded perceptions of actual events. What the legislative right hand gives, the left takes. This is an absurd result. This Court has consistently attempted to construe statutes so as to avoid absurd results, and our construction of this statute will be no different.

C

It is also axiomatic that courts are to give effect to legislative intent. *In re Certified Question,* 433 Mich 710, 722; 449 NW2d 660 (1989). We acknowledge, as shown by the legislative history, that 1980 PA 357 was enacted to invalidate *Deziel,* thus effecting a substantive change in the law. We are equally aware of the fact that the legislative history indicates that one goal of that act was to restrict expansive interpretations of the worker's compensation act, such as *Deziel.* However, one must not lose sight of what *Deziel* established and thus what 1980 PA 357 invalidated.

*Deziel* established a subjective causal analysis based on the honest perceptions of the claimant. The honest perception test has two major problems, which we presume the Legislature intended to change: (1) it allows a compensable disability to be based on imagined events, and (2) it does away with any need to prove a factual causal connection between the disability and the employment events. In enacting 1980 PA 357, the Legislature intended to eliminate *Deziel*'s honest perception test and its subjective causal analysis by requiring "actual events" and a "significant" causal connection.

1

The Legislature effected its change of the first *Deziel* problem by requiring that mental disabilities be based on actual events of employment. Courts and commentators alike realized that *Deziel*'s honest perception test permits a mental disability claim to be based on imagined, hallucinatory, or delusional events. In other words, the honest perception test permits compensation to be based on "unfounded perceptions" that actual events of employment did occur.

This problem is exemplified by this Court's handling of *MacKenzie v Fisher Body,* a companion case decided in *Deziel.* In *MacKenzie,* the WCAB held:

> "[W]e attempted then, and now, to exclude situations where the claimed compensable disability arose from an imagined/perceived/hallucinated stimulus *that has not been proven [to have] existed or [to have taken] place,* even in the most normal form—except in the mind of the recipient.
>
> "Applied to the facts of this case . . . we are forced by the medical description of plaintiff's personality to find that it is *at least* as likely an

inference that these [events] were imagined."
[*Deziel, supra* at 20. Emphasis in original.]

This Court reversed and held that had the WCAB applied a strictly subjective standard for establishing the causal nexus in *MacKenzie,* it would have awarded compensation. Thus the precedent was established in this state that even imagined, hallucinatory, or delusional events could form the basis of a compensable mental disability notwithstanding the fact that there was no causal connection between the employment and the disability.

Dissatisfied with this result, the Legislature enacted the "actual events" language, thereby partially invalidating *Deziel's* honest perception test. No longer can imaginary events form the basis of a compensable mental disability claim. A claimant must prove that actual employment events occurred as a matter of objective fact.

2

The Legislature completed its invalidation of *Deziel* by addressing the second *Deziel* problem. It realized that merely requiring a claimed disability to arise out of actual employment events was not sufficient to ensure that a given claim is truly work related. Therefore, the Legislature not only requires "actual events of employment," but also requires that those events contribute to, aggravate or accelerate the claimant's disability "in a significant manner."

The significant manner requirement does away with *Deziel's* failure to require any factual causal connection whatsoever between the injury and the employment. Under *Deziel,* a claimant was considered disabled simply because of an honest belief of disability. The significant manner requirement now forces a claimant to actually prove a signifi-

cant factual causal connection between the actual events of employment and the mental disability.

The significant manner requirement also imposes on claimants a higher standard of proof. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 216; 501 NW2d 76 (1993). Although *Farrington* deals specifically with heart disease, the significant manner requirement at issue in that case is the same requirement as we are construing here. It is, in fact, contained in the very same provisions. Not surprisingly, the analysis developed in *Farrington* for determining the significance of work-related events applies in mental disability cases as well.

Under the statutory standard, causation is determined by the factfinder. It is not determined by the honest, even if unfounded, perceptions of the claimant. In determining whether specific events of employment contribute to, aggravate, or accelerate a mental disability in a significant manner, the factfinder must consider the totality of the occupational circumstances along with the totality of a claimant's mental health in general.

The analysis must focus on whether actual events of employment affected the mental health of the claimant in a significant manner. This analysis will, by necessity, require a comparison of nonemployment and employment factors. Once actual employment events have been shown to have occurred, the significance of those events to the particular claimant must be judged against all the circumstances to determine whether the resulting mental disability is compensable.[9]

D

In construing this statute, we are also mindful

---

[9] In making this determination, medical evidence establishing the relationship between the event and the disability may play an important role.

of the presumption that the Legislature is aware of judicial interpretations of existing law when passing legislation. *Dean, supra* at 667, n 18. Perhaps nowhere is this more relevant than in the field of worker's compensation law which has a long and well-established legal history in this state. There are certain longstanding principles of worker's compensation law that are implicated in almost all compensation cases—principles that have not been altered by 1980 PA 357.

For example, it is well established that employers take employees as they find them, with all preexisting mental and physical frailties. A claimant's preexisting condition does not bar recovery:

> Nothing is better settled in compensation law than that the act takes the workmen as they arrive at the plant gate. Some are weak and some are strong. Some, particularly as age advances, have a pre-existing "disease or condition" and some have not. No matter. All must work. They share equally the hazards of the press and their families the stringencies of want, and they all, in our opinion, share equally in the protection of the act in event of accident, regardless of their prior condition of health. [*Sheppard v Michigan Nat'l Bank,* 348 Mich 577, 584; 83 NW2d 614 (1957) (SMITH, J., concurring).]

Worker's compensation law in this state has also recognized that even the most trivial physical event can lead to a compensable physical injury. *Zaremba v Chrysler Corp,* 377 Mich 226, 231; 139 NW2d 745 (1966). The issue is not whether a person of "reasonable" or "average" health would have been injured. It is whether a specific individual, regardless of preexisting conditions, sustained an injury that arose out of, and in the course of employment. Absent an explicit legislative man-

date, mental disabilities should not be treated differently.[10]

Further supporting our reading of this statute is the fact that the worker's compensation act is remedial legislation, and, as such, it is to be liberally construed. *Bower v Whitehall Leather Co,* 412 Mich 172, 191; 312 NW2d 640 (1981). The primary intent underlying the worker's compensation act is to provide compensation to eligible persons for covered disabilities. Accordingly, any statutory ambiguity should generally be construed in favor of awarding compensation. *Id. Deziel, supra* at 34-35.

E

This Court recognizes that actual events of employment, even if "ordinary," can be injurious to the mental health of a predisposed individual. The statute, by excluding "unfounded perceptions" of the actual events of employment, excludes situations in which the claimed events never occurred (i.e., where they are imagined, hallucinatory or delusional).

Although the statutory test embodied in MCL 418.301(2); MSA 17.237(301)(2), does contain objective elements, it is not a purely objective test. The events must be objectively proven to have occurred; they cannot be based on the subjective, imaginary beliefs of the claimant. Furthermore, the causal connection must be objectively established given a particular claimant's preexisting mental frailties. However, by focusing on the individual worker, as opposed to an average worker, both the significant manner requirement and the

---

[10] We note that the very language of the provision (i.e., "contribute," "aggravate," "accelerate") presupposes a preexisting mental disability. After all, a mental disability must first exist before actual events of employment may "contribute" to it, "accelerate" it, or "aggravate" it.

actual events requirement also have substantial subjective elements.

It is, therefore, irrelevant how a "reasonable" person would react to the objectively established actual events. The relevant inquiry, and the only inquiry presently required by worker's compensation law in this state, is: Did the actual events of employment occur, and do these bear a significant relationship to the mental disabilities? Reduced to its simplest form, the analysis is this: Given actual events and a particular claimant, with all the claimant's preexisting mental frailties, can the actual events objectively be said to have contributed to, aggravated, or accelerated the claimant's mental disability in a significant manner?

This type of inquiry places the focus where it should be: on the authenticity of the underlying event and the significance of its relationship to the resulting disability.

### VI. APPLICATION

Turning to the cases at bar, it is clear that the Court of Appeals in all three cases applied a purely objective standard. We reject this standard. Had the Legislature desired to make mental disabilities compensable only when they arise out of unusual events or events likely to cause mental disability in a "reasonable" person, it could have easily and explicitly done so. It did not. Consequently, we reverse the decision of the Court of Appeals in all three cases.

### A

We hold that the WCAB in *Bach* and *Boyle* applied a purely objective standard as well. De-

spite the narrow scope of appellate review in these cases, we find that the WCAB erred in determining the proper legal standard to be applied. Const 1963, art 6, § 28; MCL 418.861a(14); MSA 17.237(861a)(14). Accordingly, we reverse the rulings of the WCAB in *Bach* and *Boyle,* and we remand these cases to the WCAC for proceedings consistent with this opinion.

B

We hold that the WCAB applied the correct legal analysis in *Gardner* and thus we affirm its holding. The WCAB held:

> No psychiatric testimony has been presented that plaintiff is not disabled. We see no other finding except that he [Gardner] is unable to function psychiatrically in the workplace.
>
> . . . [T]he fact that plaintiff was required to be subjected to a grievance hearing in regard to excess work and the fact that plaintiff was checked up on by his superiors are not unfounded perceptions, but are fact. . . .
>
> Third, we must determine whether the employment significantly aggravated plaintiff's condition. We find, based on the medical testimony of Dr. Feldstein, that the employment did indeed significantly contribute to plaintiff's condition. [Unpublished opinion of the WCAB, decided September 24, 1990 (Decision No. 1176).]

Although the WCAB in *Gardner* purported to base its analysis on *Deziel,* it found a mental disability arising out of actual events of employment. It further found that the events of employment significantly aggravated the mental disability. This analysis, in fact, comports with our interpretation of MCL 418.301(2); MSA 17.237(301)(2).

### VII. CONCLUSION

We hold that to establish a compensable mental disability claim arising on or after January 1, 1982, a claimant must prove: (1) a mental disability; (2) arising out of the actual events of employment, not unfounded perceptions thereof; and that (3) those events contributed to, aggravated, or accelerated the mental disability in a significant manner.

We believe that our interpretation of 1980 PA 357 serves the legislative intent of restricting *Deziel's* expansive causal analysis based on a claimant's honest perceptions, while still providing compensation for mental disabilities. Our interpretation is also in accord with established worker's compensation law in this state. Employers take employees as they find them. Allowing actual, if seemingly unimportant, events to form the basis of a compensable mental disability treats mental injuries the same as physical injuries.

We reject application of a purely objective standard when examining causation in mental disability cases. We will not infer such a radical change in this state's worker's compensation law merely because there is some ambiguity in a given statutory provision.

Accordingly, we reverse the decision of the Court of Appeals in all three cases. We reinstate the award of compensation made by the WCAB in *Gardner,* and we remand to the WCAC in *Bach* and *Boyle* for further proceedings consistent with this opinion.

LEVIN, BOYLE, and MALLETT, JJ., concurred with CAVANAGH, C.J.

BRICKLEY, J. (*concurring in part and dissenting in part*). While I agree with much of the analysis

offered by the majority, I write separately to express my understanding of the proper interpretation of MCL 418.301(2); MSA 17.237(301)(2). It is my opinion that by amending MCL 418.301(2); MSA 17.237(301)(2) to demand that mental disability claimants establish "actual events of employment, not unfounded perceptions thereof," the Legislature sought to create a standard of causation that incorporated greater substantive objectivity. Because the majority seems to leave intact much of the purely "subjective causal nexus" test created by this Court in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 26; 268 NW2d 1 (1978), abrogated by the Legislature in 1982, I respectfully dissent.

I

It is a well-established rule of statutory construction that every word of a statute be given meaning and no word be treated as surplusage or rendered nugatory.[1] MCL 418.301(2); MSA 17.237(301)(2) provides, in pertinent part, that mental disabilities may be compensable "when arising out of actual events of employment, not unfounded perceptions thereof." The majority properly interprets the first part of this phrase (the "actual events" language) as demanding the *existence* of actual (i.e., not delusional or imaginary) employment events. However, the majority interprets the second part of this phrase (the "unfounded perceptions" language) as merely reiterating the requirement that actual events of em-

---

[1] *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980), *(After Remand),* 420 Mich 463; 363 NW2d 602 (1984), aff'd 478 US 621; 106 S Ct 3129; 92 L Ed 2d 504 (1986); *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971); *Klopfenstein v Rohlfing,* 356 Mich 197; 96 NW2d 782 (1959); *Wyandotte Savings Bank v State Banking Comm'r,* 347 Mich 33; 78 NW2d 612 (1956); *Baird v Detroit Election Comm,* 316 Mich 657; 26 NW2d 346 (1947); *United Ins Co v Attorney General,* 300 Mich 200; 1 NW2d 510 (1942).

ployment have existed.[2] This conclusion is problematic.

It is manifestly clear from the unambiguous language of MCL 418.301(2); MSA 17.237(301)(2) that "actual" employment events must exist to recover for a mental disability—recovery is only possible for disabilities "arising out of actual events of employment." To what, therefore, does the "unfounded perceptions" language refer? The majority's conclusion that this second requirement simply demands that "actual events" have existed renders the "unfounded perceptions" language superfluous, nugatory, and without independent effect. That "actual events" have occurred is already demanded by the first part of this phrase.

A more practical interpretation—one that gives effect to the clear and unambiguous language of MCL 418.301(2); MSA 17.237(301)(2)—is that "unfounded perceptions" refers not to the *existence* of an event, but to a claimant's *interpretation or perception* of an actual event. This conclusion does not reiterate the "actual events" requirement, but instead demands, as an independent matter and without unnecessary surplusage, that a claimant's *perception* of actual events not have been unfounded.[3]

---

[2] Specifically, the majority explains:

The statute [MCL 418.301(2); MSA 17.237(301)(2)], by excluding "unfounded perceptions" of the actual events of employment, excludes situations in which the claimed events never occurred (i.e., where they are imagined, hallucinatory or delusional). [*Ante* at 49.]

This is just another way of saying that the *existence* of the event must be objectively proven—that the "unfounded perception" or belief in an occurrence is not an "actual event" within the meaning of MCL 418.301(2); MSA 17.237(301)(2). Notably, however, this conclusion places no substantive limitations upon how the event must be perceived or interpreted by the claimant in order to recover benefits.

[3] The requirement that an "actual event" have occurred is, in this

As importantly, this conclusion is consistent with the Legislature's decision to abrogate the holding in *Deziel, supra.* The *Deziel* "subjective causal nexus" test permitted recovery if a claimant honestly perceived that mental injury resulted from an employment event. While the majority explains that *"Deziel's* honest perception test permit[ted] a mental disability claim to be based on imagined, hallucinatory, or delusional *events,"* *ante* at 45 (emphasis added), in fact *Deziel* did not address "events" but, rather, dealt exclusively with "causation" determinations.[4] Accordingly, while the Legislature's 1982 amendment of MCL 418.301(2); MSA 17.237(301)(2), may have added an "actual events" requirement, its motivation was to reverse the *causation* standard created by *Deziel.*

So what is "causation" in a mental disability case? Whether a claimant suffers from a preexisting mental infirmity, or whether the problem only surfaces during employment, compensable mental

sense, a condition precedent to further inquiry under the "unfounded perception" prong of MCL 418.301(2); MSA 17.237(301)(2). Under both this interpretation and the majority analysis an "actual event" will seldom be difficult to establish. In *Bach,* for example, "actual events" would have included such everyday occurrences as claimant having to inform callers that her supervisor was unavailable and the standard job evaluations that claimant received. In *Boyle,* "actual events" would include student absenteeism and declining interest, low student passage rates, curriculum cutbacks, and student disrespect for instructors. In *Gardner,* claimant's grievance hearing, increased workload, and personal conflict with co-workers would suffice as "actual events."

[4] The *Deziel* Court defined the scope of its inquiry as follows:

This Court views the *real* problem underlying these three cases to be whether the WCAB identified and correctly applied the legal standard for establishing legal causation in workers' compensation cases involving mental and nervous injuries. More succinctly, the Court must decide whether the WCAB properly states the causal nexus to be established by plaintiffs who allege that their disabilities and injuries are psychoneurotically or psychotically rooted . . . . [*Id.* at 21. Emphasis in original.]

disabilities arise from *perceptions* of *events.* Being of a psychological origin, the disability affects the mind not the body. The claimant's mind perceives actual events in such a manner that the compensable mental disability is induced, "contributed to or aggravated or accelerated by" the event in a significant manner. MCL 418.301(2); MSA 17.237(301)(2). Causation, therefore, in this context is nothing more than the process of perceiving events and reacting to them.

Under *Deziel,* this process of perception—i.e., causation—was as subjective as the claimant. Delusional, unfounded or imaginary misperceptions of events were, if honestly perceived by a claimant, potentially compensable. The Legislature inextricably altered this approach. Today, a claimant's *interpretation and perception* of an actual event must not amount to an "unfounded perception" of that event—causation must be based in part on founded perceptions of actual events. To hold, as does the majority, that the "unfounded perceptions" language of MCL 418.301(2); MSA 17.237(301)(2) refers to the existence of actual events, and not to causation or a claimant's interpretation of those events, is simply inconsistent with the Legislature's avowed purpose of invalidating *Deziel.*[5] In fact, the majority holding leaves

___

[5] Interestingly, at least one passage from the legislative history of SB 1044 (which became 1980 PA 357), cited as supportive by the majority, in fact suggests that the "unfounded perceptions" language of MCL 418.301(2); MSA 17.237(301)(2) was intended to implicate not specific employment events but other aspects of the employment relationship, such as how an employee interpreted those events:

"After December 31, 1981 . . . [m]ental disability will be compensable if it arises out of actual events of employment; an employee's unfounded perceptions *of the employment* and its relationship to a mental disability will not be sufficient to substantiate a claim for compensation." [*Ante* at 40-41, quoting Senate Analysis Service, SB 1044, Second Analysis, January 7, 1981. Emphasis added.]

intact much of the "subjective causal nexus" test created in *Deziel*—once an "actual event" is established a claimant's delusional, hallucinatory, or imagined perceptions of that event will not prohibit recovery. Thus, in reality, the "focal point" of the majority's new causation standard continues to be "the plaintiff's own perception of reality." *Deziel* at 26.

II

My interpretation of MCL 418.301(2); MSA 17.237(301)(2) does not create a purely objective approach to mental disability determinations. Nor does this approach abrogate the well-established principle of worker's compensation law that "employers take employees as they find them, with all preexisting mental and physical frailties." *Ante* at 48. In fact, this interpretation of MCL 418.301(2); MSA 17.237(301)(2) demands that a hybrid of subjective and objective considerations be applied to three facets of an individual's mental disability claim: 1) the existence of the event, 2) the claimant's perception of the event, and 3) the claimant's reaction to the event.

Objective analysis is reflected in the requirements that *actual events* of employment have occurred and that a claimant's *perception* or *interpretation* of those events have been well-founded. This analysis demands both procedural and substantive objectivity. The existence of actual events and well-founded perceptions must be discerned by an objective trier of fact, not by the claimant. The standard of review is also objective—did the event actually occur, and was claimant's perception of it well-founded?

Conversely, subjective analysis is proper in examining a claimant's *reaction* to actual employ-

ment events, perceived in a well-founded manner.
A claimant with a psychiatric disability cannot be
expected to *react* to certain events, properly per-
ceived, in a manner entirely consistent with that
of a normal, healthy individual. However, neither
the Legislature nor the position I advocate here
demands such a reaction. While a claimant's *per-
ception* of the event must be objectively well-
founded, that same claimant's *reaction* to the
event can be very atypical.[6]

In short, a mental disability claimant's percep-
tion of actual events of employment must be estab-
lished as well-founded. Once so established, a
claimant's reaction to the events is judged subjec-
tively, taking into account all claimant's preexist-
ing infirmities and disabilities. This subjective
analysis, individualized to the claimant, insures
continued recognition of employers' general obliga-
tion to "take employees as they find them."

---

[6] Because the line between *perception* and *reaction* is arguably
difficult to discern, I offer the following example to illustrate this
important distinction.

Claimant One, who suffers from acute paranoia and a constant fear
of death, is a postal worker who sorts mail at a branch office. One
day, while at work, the claimant is caught in the cross fire of a
shooting spree instigated by a disgruntled former postal employee.
The claimant is physically unharmed and understands that the
shooting is an isolated incident. Nevertheless, the shooting reinforces
the claimant's fear of death and, as a result, the claimant is unable to
continue work for the Postal Service or any other employer. Because
the claimant's *perception* of this actual event was founded, his *reac-
tion* is assessed subjectively. If the claimant can show that the event
"contributed to or aggravated or accelerated" his mental disability in
a significant manner, he is entitled to recovery.

Claimant Two, who also suffers from acute paranoia and a constant
fear of death, is a postal worker sorting mail in a different branch
office. One day, while at work, a fellow employee accidentally drops a
heavy box onto the floor. The claimant, standing nearby, hears the
loud bang and mistakes it for gunfire. Believing the incident to be a
warning that he will soon be shot and killed, the claimant is unable
to continue work for the Postal Service or any other employer.
Because the claimant's *perception* of this actual event is unfounded,
his *reaction* is irrelevant and the claimant is not entitled to recover
for a mental disability.

In summary, I agree with the majority that MCL 418.301(2); MSA 17.237(301)(2), as amended, demands that actual events of employment be proven to an objective trier of fact. *Ante* at 46. I also agree that this provision requires objective proof of "a significant factual causal connection between the actual events of employment and the mental disability." *Ante* at 46-47. However, and for the reasons stated above, I disagree with the majority that the "unfounded perceptions" language of MCL 418.301(2); MSA 17.237(301)(2) simply refers to the existence of an employment event.

### III

#### *GARDNER v VAN BUREN PUBLIC SCHOOLS*

The Worker's Compensation Appeal Board in *Gardner v Van Buren Public Schools,* 197 Mich App 265; 494 NW2d 845 (1992), interpreted and applied MCL 418.301(2); MSA 17.237(301)(2) consistent with my reading of the statute.[7] The Court of Appeals reversed, concluding that the WCAB "did not indicate why an objective person would find significant the two incidents that the WCAB found satisfied the requirement of a personal injury." *Id.* at 270. This "objective analysis" of causality by the Court of Appeals was erroneous insofar as it failed to distinguish between the objective standard for identifying a precipitating employment

---

[7] Specifically, the *Gardner* panel concluded that claimant had established a psychiatric disability significantly aggravated by two work-related actual events. Notably, the panel did not make an express finding that claimant's perception of these events was founded. Rather, the panel concluded—on the basis of the testimony of three third-party witnesses, not on claimant's testimony—that these events actually occurred as maintained in the complaint for benefits.

It is clear from these findings of fact that the *Gardner* panel implicitly found claimant's perception of actual events not to have been unfounded.

event and the subjective standard for assessing that event's effect on a claimant. Once an actual event of employment is properly perceived by the claimant, it is the *claimant's* reaction—not a hypothetical "objective person['s]"—that matters. For this reason, in *Gardner* I would reverse the decision of the Court of Appeals and affirm the decision of the WCAB.

### BOYLE v DETROIT BOARD OF EDUCATION

The WCAB in *Boyle v Detroit Bd of Ed,* 197 Mich App 255, 261; 494 NW2d 818 (1992), concluded that, while claimant established certain events of employment, these events amounted to nothing more than "general allegations of stress and anxiety" and failed to meet the "actual events" requirement of MCL 418.301(2); MSA 17.237(301)(2). Accordingly, the panel never fully addressed whether claimant's perceptions of employment events were founded. The Court of Appeals affirmed, explaining that the "actual events" requirement "would become meaningless if the ordinary daily conditions and minutiae of employment were sufficient to support a mental disability claim." *Id.* at 260. Like the WCAB, the Court of Appeals did not determine whether claimant's perceptions of employment events were founded. Both the WCAB and the Court of Appeals erred.

The WCAB is correct that specific employment events must be pleaded, and established, to support a mental disability claim. However, both the WCAB and the Court of Appeals err in equating ordinary employment events with common workplace stresses. While this might be the normal reaction for the hypothetical reasonable worker, psychiatric disability claimants are often not such objective persons. What matters is whether an

employment *event* occurred, and whether this event was perceived by the claimant in a founded manner. If so, it is then the claimant's reaction that matters. Accordingly, ordinary and minute "actual events" of employment may, if properly perceived by a claimant, serve as the basis for a mental disability claim.[8] I would reverse both the decision of the Court of Appeals and the WCAB in *Boyle,* and remand to the WCAB for further proceedings. See *Farrington v Total Petroleum, Inc,* 442 Mich 201, 225; 501 NW2d 76 (1993) (RILEY, J., dissenting).

### BACH v FLINT BOARD OF EDUCATION

The WCAB in *Bach* properly interpreted and applied MCL 418.301(2); MSA 17.237(301)(2) and, accordingly, I would affirm its decision. While the Court of Appeals affirmance is slightly more problematic, I again would affirm.

The Court of Appeals explained that "the WCAB found that plaintiff's *reaction,* which was dependent on plaintiff's *perceptions,* was unfounded." *Bach v Flint Bd of Ed,* 197 Mich App 247, 251; 494 NW2d 815 (1992). This is not an accurate statement of the WCAB decision or of the inquiry demanded by MCL 418.301(2); MSA 17.237(301)(2). The WCAB found that claimant's *perception* of actual employment events was unfounded. Accordingly, the WCAB never considered whether claim-

---

[8] While I acknowledge probable and understandable frustration of the Court of Appeals with "ordinary daily conditions and minutiae of employment" serving as the basis for a mental disability claim, it is nevertheless clear that the Legislature has only demanded that "actual" employment events, not objectively significant, abnormal, or uncommon incidents, serve as the basis for a mental disability claim. The concerns expressed by the Court of Appeals are more properly infused and analyzed under the "significant manner" causation requirement, not the "actual events" demand, of MCL 418.301(2); MSA 17.237(301)(2).

ant's subjective *reaction* significantly "contributed to or aggravated or accelerated" her mental condition. Further, and contrary to the Court of Appeals decision, claimant's *perception* had to be founded; claimant's *reaction* did not.

With this clarification, and because the remainder of the Court of Appeals opinion is accurate, I would affirm its decision in *Bach.*

RILEY, J. (*dissenting*). Because I believe that the majority advocates a highly subjective standard for work-related mental disabilities, contrary to the 1980 amendments of the Worker's Disability Compensation Act, I respectfully dissent.[1]

As this Court stated in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), the legislative amendments of the WDCA specifically addressed and rejected this Court's formulation of the entitlement to worker's disability benefits for mental disabilities in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 26; 268 NW2d 1 (1978). In *Deziel,* the majority created a strictly subjective causal nexus between incidents of employment and the disability, which permitted a claimant to establish compensable injury with "honest[ ] perce[ptions]" of work events despite any consideration of reality. The three dissenting justices believed that the new test was a significant departure from the longstanding requirement that a claimant must establish, as a matter of fact, that the alleged work event "aggravate[d], accelerate[d], or combine[d] with some internal weakness or disease to produce the disability." *Id.* at 61 (COLEMAN, J., dissenting), quoting 1 Larson, Workmen's Compensation Law, § 12.20, p 3-381.[2]

---

[1] See 1980 PA 357. The relevant provisions took effect on January 1, 1982.

[2] Professor Larson has also stated:

My dispute with the majority's ruling regards the causal nexus between work-related incidents and their contribution to a mental disability, which must be "actual" as well as "significant." See MCL 418.301(2); MSA 17.237(301)(2).[3] As I understand it, the 1980 amendments of the WDCA created a form of "objective" criteria with which to assess the merits of a worker's disability claim. Otherwise, there would be no way to narrow or restrict the applicable eligibility qualifications, which was the distinct purpose of reform efforts. See *Farrington v Total Petroleum, Inc,* 442 Mich 201, 216, n 16; 501 NW2d 76 (1993);[4] *Dean v Chrysler Corp,* 434 Mich 655, 666-667; 455 NW2d 699 (1990); VanderLaan & Studley, *Workers' compensation reform: A case study of the legislative process in Michigan,* 14 U Mich J L Ref 451, 459-460 (1981).

The difficulty lies in distinguishing between a worsening of condition resulting from a work-related event and a mere manifestation of a preexisting mental disability occurring at the workplace. The statute as amended makes clear that the work incidents must be "actual events of employment, not unfounded perceptions thereof."

---

The subjective causal nexus test has not fared well since its bold unveiling by the Michigan Supreme Court in 1978. The Michigan legislature repudiated it in 1982, by enacting an amendment stating that "mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof." Alaska, Iowa, Oregon, New Jersey, and Pennsylvania have emphatically rejected the doctrine. The only kind words for it have come from California, in an intermediate appellate court opinion. [1B Larson, Workmen's Compensation Law, § 42.23(d), pp 7-931 to 7-935. Citations omitted.]

[3] In MCL 418.401(2)(b); MSA 17.237(401)(2)(b), which defines mental disability and other conditions of the aging process, the Legislature used the same "significant manner" language.

[4] See also *id.* at 225-229 (RILEY, J., dissenting in part).

MCL 418.301(2); MSA 17.237(301)(2). The majority, however, attempts to blur the distinction between manifestation and causation by distinguishing between "unfounded perceptions" and "imagined or hallucinatory events."[5] *Ante*, p 44. The former would always have a cause under the majority view, while the latter would never have a basis in an actual event.

In this way, the majority establishes the first element of a causal nexus in cases in which there is anything that could be viewed as an actual, work-related event regardless of its propensity to traumatize. Thus, even the most innocuous of work-related events could establish causation without regard to the degree and nature of a *preexisting* mental disability.[6] The only question left would be the significance of the harm to the mental

---

[5] In effect, the majority strikes the term "unfounded perception" from the statute on the basis that its import would lead to an absurd result. Instead, only purely imagined or hallucinatory events are excluded from coverage under § 301 of the WDCA. *Ante*, p 44. In response, I call attention to the longstanding rule of construction that "[e]very word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Baker v General Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

In my opinion, the term "unfounded perceptions" is easily reconciled with the rest of the statutory language. As long as the alleged trauma is objectively verifiable, its propensity for contribution to a preexisting condition is established. The only hurdle remaining is for the claimant to prove that the event contributed to or accelerated the preexisting mental condition in a significant manner.

In this way, we would also preserve the distinction between manifestation and causation. Moreover, this view preserves the objective criteria added by the 1980 amendments of the WDCA and previously recognized by this Court. See, e.g., *Hurd, supra.*

[6] An example of this would be an ordinary work request such as a request for some work on overtime that the employee interprets as a conspiracy for termination based on a preexisting mental condition. First, any reaction may be a manifestation of the preexisting condition that could be misinterpreted as the worsening of condition. Second, any worsening of condition that could occur would be from the misperception rather than from the work-related event. Accordingly, I would require that the event itself bear some indicia of trauma that may be verified on an objective basis.

disability, which is a subjective standard. I am
unable to discern any form of objective criterion in
the majority's formulation of the standard that
effectuates the objectivity mandated by the amend-
ments of MCL 418.301(2); MSA 17.237(301)(2). See
*Farrington, Dean,* and VanderLaan & Studley,
*supra.*

As the dissenting justices argued in *Deziel:*

> Most neurotic and psychotic states do not have a
> single cause-in-fact and are emotional disorders
> with a pre-existing, extremely complex etiology
> originating in childhood. Symptoms are usually
> preceded by some form of trauma, however minor.[8]
> The relationship between such trauma and symp-
> toms is more chronological than causal.
>
> \* \* \*
>
> The job becomes a convenient "hook" upon
> which to hang all one's troubles . . . . Similarly,
> the suggestive effect of the legal emphasis upon
> the causative role of the job, necessary to recovery,
> will not often be lost on the worker who hangs his
> life's problems on the "hook" of some trivial stim-
> ulus or trauma. Indeed, it is the common conclu-
> sion of psychiatrists that the compensation process
> promotes neuroses and has a debilitating effect
> upon claimants.

---

[8] Symptoms are the manifestations of the mental disorder.
They represent an attempt by the neurotic personality to
resolve inner problems and create psychic gain.

---

[403 Mich 53-54, 57 (COLEMAN, J., dissenting).][7]

I believe that a claimant for a work-related
mental disability must establish by a preponder-
ance of the evidence, as a matter of *objective*
reality, an actual and traumatic event. Otherwise,
the danger that the alleged harm is a mere mani-

---

[7] See also *Peters v Michigan Bell Telephone Co,* 423 Mich 594, 623-
624; 377 NW2d 774 (1985) (RILEY, J., dissenting).

festation of an underlying problem and not a cause is too great. A successful claim should require proof of *specific* incidents and not merely general conclusions of stress, anxiety, or exertion over a period of time. See *Miklik v Michigan Special Machine Co,* 415 Mich 364, 370; 329 NW2d 713 (1982) (a disability claim for an allegedly work-related heart condition). In this way, we would honor the legislative intent as well as preserve the distinction between causation and manifestation.

In *Carter v General Motors Corp,* 361 Mich 577; 106 NW2d 105 (1960), this Court first recognized a work-related mental disability aggravated by ordinary conditions of employment. However, careful review of *Carter* indicates that the work events found highly stressful by the plaintiff occurred over a continuous, two-week period. See *id.* at 580-581. Accordingly, *Carter* does not support the proposition that long-term stress, anxiety, or exertion objectively satisfies the actual event requirement as a matter of objective reality.

Moreover, the plaintiff in *Carter* suffered from an emotional collapse on the final day of the two-week period that led to his hospitalization. Accordingly, there was a clear physical effect of the trauma occurring in the midst of the work-related stress that objectively supported the stress as the actual cause of the mental disability.[8]

Without a recognizable, stressful event or at least a physical manifestation of injury occurring close in time to the alleged event, it would be virtually impossible to determine with a fair degree of certainty whether the allegations of work-

---

[8] See also 1B Larson, n 2 *supra,* § 42.25(c), p 7-960 (citing jurisdictions, including Michigan, that permit recovery in either sudden-stimulus or gradual-stimulus situations with "the insistence on having something physical to cling to").

related injury are actualities or misperceptions in the absence of expert testimony on the matter. The effect of the majority view would be to make employers the insurers of their workers' wage losses for mental disabilities without necessarily establishing an adequate causal link.

Thus, I am compelled to dissent.

GRIFFIN, J., concurred with RILEY, J.